WILLIAM D. HAWLEY, appellant, v. DAVENPORT, ROCK ISLAND &
NORTHWESTERN RAILWAY COMPANY, a corporation, and
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY,
an Illinois corporation, appellees.

No. 47787.

(Reported in 45 N.W.2d 513)

18

JANUARY 9, 1951.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant.

Lane & Waterman, of Davenport, for appellee Davenport, Rock Island & Northwestern Railway Company.

Clark, Pryor, Hale, Plock & Riley, of Burlington, for appellee Chicago, Burlington & Quincy Railroad Company.

SMITH, J.—Defendant is the owner of the tracks at the crossing in Bettendorf, Iowa, where the collision occurred between a Ruan Transport Corporation truck, driven by plaintiff, and

a train of the Chicago, Burlington & Quincy Railroad Company, hereinafter, for convenience, called the CB&Q.

Defendant is alleged to have been negligent in failing to have a flagman or crossing gates or electric signaling or other reasonable protective device to warn of approaching trains. In addition to general denial it specially pleads res judicata and estoppel by judgment because of the result in a former action brought by plaintiff against the CB&Q, claiming damages for the same injuries suffered in the same collision.

At a hearing on points of law in advance of trial (pursuant to rule 105, Iowa R.C.P.) the trial court in the instant case sustained the special defense and entered judgment of dismissal. This appeal is from that judgment. The sole question therefore is whether the judgment in Federal court in favor of the CB&Q in that other action is a bar to plaintiff's recovery against defendant here. The merits of the case are not otherwise involved.

That other case was joined for trial with one brought by the Ruan Corporation. Recovery was denied both plaintiffs because plaintiff was held to have been guilty of contributory negligence as a matter of law. See Chicago, Burlington & Quincy Railroad Co. v. Ruan Transport Corp., 8 Cir., Iowa, 171 F.2d 781. The defendant therein was charged with negligence in operating its train; and also with negligence in maintenance of the crossing, substantially as alleged against defendant here. The trial court in the earlier case instructed the jury that the defendant (CB&Q) could not be held liable for any neglect in maintaining the crossing. There was verdict for plaintiff. The resulting judgment was reversed by the Circuit Court of Appeals and final judgment rendered for defendant. Chicago, B. & Q. R. Co. v. Ruan Transport Corp., supra.

I. The operating agreement by virtue of which the CB&Q train was using defendant's track on the day of the collision is between four railway company track owners (including defendant) as first parties, on the one hand, and the Chicago, Milwaukee & St. Paul Railway Company as second party, and the CB&Q as third party, on the other. The contract is long and has the effect of making first parties lessors and second and third

parties lessees of certain trackage in the area where this collision occurred.

The pertinent paragraphs relied on by defendant are as follows: "Article IV. * * * Section 5. * * * each of said parties shall and will at all times assume, bear and pay all loss, damage or injury which its engines, cars or trains may do to third persons * * * and each shall and will at all times, and does hereby indemnify the other against all claims or demands for or on account of any loss or damage which each has hereinabove agreed itself to assume and bear. *. * * Section 7. In case suit shall be commenced against the parties of the first part, or any of them, founded upon any damage or injury done by the engines, cars or trains of either the party of the second or third part, while the same are on any of the tracks, the use of which is hereby granted, the parties of the first part, or any of them, may give notice thereof to the parties of the second or third part, or either of them as the case may be, and thereupon they or either of them, shall assume the defense of said suit, and shall and will save and hold the parties of the first part harmless from all loss or cost by reason thereof."

Defendant contends these provisions made second and third parties indemnitors and first parties indemnitees as to such damages as are sought to be recovered here, that is, damage "done by the engines, cars or trains" of second or third party. There seems to be no escape from that conclusion under the express language of the contract.

II. Two Code sections have important and direct bearing on the relationship of the two railroads here involved. Section 476.9, Iowa Codes 1946, 1950, provides: "All the duties and liabilities imposed by law upon corporations owning or operating railways shall apply to all lessees or other persons owning or operating such railways as fully as if they were expressly named herein; and any action which might be brought or penalty enforced against any such corporation by virtue of any provisions of law may be brought or enforced against such lessees or other persons."

Section 476.23 provides: "Any railway corporation may sell or lease its property and franchises to, or make joint running arrangements not in conflict with law with, any corporation

owning or operating any connecting railway, and any corporation operating the railway of another shall be liable in the same manner and extent as though such railway belonged to it."

III. In the absence of legislative authority a railway company lessor is liable for negligence of the lessee in operation. 51 C. J. 1088, note 84; 44 Am. Jur., Railroads, section 340, note 17; Sorenson v. Chicago, R. I. & P. R. Co., 183 Iowa 1123, 1130 et seq., 168 N.W. 313; De Lashmutt v. Chicago, B. & Q. R. Co., 148 Iowa 556, 126 N.W. 359. The duty of operating with due care for the safety of the public is owed jointly by lessee and lessor. The lessor can only be relieved of such duty by unequivocal legislative release. Sorenson v. Chicago, R. I. & P. R. Co., supra, page 1135.

The Code sections cited above do not relieve the lessor of such liability (for train operation) but are cumulative. They make the lessee responsible to the public, jointly with lessor, for track and crossing maintenance. Sorenson v. Chicago, R. I. & P. R. Co., supra.

Under the law therefore there is no question of primary and secondary liability of lessor and lessee to the public for negligence either in operation of trains or maintenance of track and crossing. The duty of exercising due care in both particulars is owed jointly and severally to the public by both companies, without any right of contribution or reimbursement, in absence of contract.

Therein, as we analyze plaintiff's argument, lies its fallacy. It is bottomed on an erroneous assumption that lessor is primarily liable for negligence in maintaining its property and lessee primarily liable for negligence in operating its trains. So far as concerns the duty of both to third persons, this responsibility is primary, joint and several, and cannot be changed by contract between the companies. Any negligence of omission or commission is equally the negligence of both.

The parties may however *as between themselves* change their relationship to each other by contract. This they did here as we have seen. The contract clearly provides that so far as concerns any "damage or injury done by the engines, cars or trains of either" lessee while they are upon lessor's tracks, such lessee under the contract becomes an indemnitor and lessor an

indemnitee, whether the alleged act or omission to act be that of lessor or lessee.

IV. This analysis of the relation between defendant and the CB&Q, defendant in the former action, is necessary to a discussion of the one issue presented here. Plaintiff, in argument, properly observes that the question here "is not whether the judgment based on the opinion of the court of appeals is correct, but whether it constitutes a bar to the maintenance by the same plaintiff of his action" against this defendant.

██ The general rule is that the doctrine of res judicata is available only to the parties to a prior adjudication and their privies, King City, Mo., for use and benefit etc. v. Southern Surety Co., 212 Iowa 1230, 1235, 238 N.W. 93; Kunkel v. Eastern Iowa Light & Power Co-operative, 232 Iowa 649, 656, 5 N.W.2d 899; 50 C. J. S., Judgments, sections 592, 756; 30 Am. Jur., Judgments, sections 161, 219, 237; Restatement of the Law, Judgments, sections 82, 83.

We are not interested here in the technical distinction sometimes made between the terms res judicata and estoppel by judgment, or between estoppel by judgment and estoppel by verdict. 50 C. J. S., Judgments, section 593; 30 Am. Jur., Judgments, section 167. These seem not to be particularly useful under this record. If plaintiff is barred or precluded from relitigating the question of his freedom from contributory negligence—the issue already adjudicated against him in the federal case—it can make little difference to him by what name the lethal doctrine is called. It has been said a plea of res judicata is nothing more than a plea of estoppel. Consolidation Coal Co. v. Hall, 296 Ky. 390, 177 S.W.2d 150, 151. Whether this be true is immaterial since the sustaining of either operates as a bar to further litigation of an issue already judicially determined.

The general rule as just stated, or rather its limitation to parties and privies, has a broadening exception to the effect that "persons who, although not parties or privies, were so connected in interest * * * with plaintiff or defendant in the former action that the judgment may be regarded as virtually recovered for them may avail themselves of such judgment as res judicata in a subsequent suit." 50 C. J. S., Judgments, section 757. This exception is peculiarly appropriate where failure to apply it

would deprive a party in the later case of an advantage he would otherwise legally have. It may be considered either an extension of the doctrine of res judicata or as a redefinition of the term "privy." Its classification is unimportant.

Mutuality of estoppel is usually considered one of the required elements of true res judicata but we have recognized that it is not always necessary. Macedonia State Bank v. Graham, 198 Iowa 12, 15, 16, 199 N.W. 248, 34 A. L. R. 148.

In Macedonia State Bank case, supra, we quoted approvingly from Portland Gold Mining Co. v. Stratton's Independence, Ltd., 8 Cir., Colo., 158 F. 63, 68, 16 L. R. A., N. S., 677, 681:

" 'It is settled by repeated decisions that the general rule * * * is subject to recognized exceptions, one of which is that in actions of tort * * * if the defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel, even though he would not have been bound by it had it been the other way. And we think it could not well be otherwise, for, when the plaintiff has litigated directly with the immediate actor the claim that he was culpable, and, upon the full opportunity thus afforded for its legal investigation, the claim has been adjudged against the plaintiff, there is manifest propriety, and no injustice, in holding that he is thereby concluded from making it the basis of a right of recovery from another who is not otherwise responsible.' "

In Bigelow v. Old Dominion Copper Mining and Smelting Co., 225 U. S. 111, 127, 128, 32 S. Ct. 641, 642, 56 L. Ed. 1009, 1021, Ann. Cas. 1913E 875, an analogous exception is recognized though held not applicable under the record of that case:

"An apparent exception to this rule of mutuality has been held to exist where the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit, upon the same facts, when sued by the same plaintiff. * * * The unilateral character of the estoppel of an adjudication in

such cases is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another, when that other has been exonerated in a direct suit. The cases in which it has been enforced are cases where the relation between the defendants in the two suits has been that of principal and agent, master and servant, or indemnitor and indemnitee."

Precedents factually in point are apparently rare. None is cited by either party nor have we found any that involved more than a fairly comparable situation. The objection to applying the doctrine of res judicata in cases where it cannot be said the estoppel is mutual is met by the quotations we have just shown.

■ The Restatement of the Law of Judgments (much cited and relied on here by both parties) discusses at length the situation created by successive actions against two tort-feasors where one is also an indemnitor and the other an indemnitee. It announces the rule that where the injured person first brings an action against the indemnitor, a valid judgment in that action *"for the defendant on the merits for reasons not personal to the defendant terminates the cause of action against the indemnitee."* (Italics supplied.) Restatement of the Law, Judgments, section 96(1)a, page 472.

The assumption of facts in that statement, as well as in the other statements above-quoted, is analogous, if not exactly similar, to the situation where both defendants would be jointly liable for the tort alleged in either action, one defendant however being also an indemnitor to the other by virtue of the contract. The result in the first action was clearly based on "reasons not personal to the defendant" indemnitor.

The rationale of the rule given in the Restatement, pages 473, 474, is clearly pertinent here:

"Two basic principles of res judicata with a modification of one of them are illustrated in this Section. Normally a person's rights should not be foreclosed without an opportunity to be heard by an impartial tribunal which has jurisdiction over him. On the other hand, a person should not be entitled to litigate the same issue in more than one action. This second principle is limited to litigation with the same adversary, since normally a

person is entitled to relitigate an issue where the adversary is a different person. Relitigation of an issue with a new adversary is permitted because of the assumed unfairness of binding one party to a proceeding by the rules of res judicata while the other party is not bound: where there is a new adversary who was not privy to the first action, since the second adversary would not be bound by the rules of res judicata, the person who was a party to the first proceeding should not be bound either. This desirability for equality between litigating parties with reference to the rules of res judicata is not, however, of pervading importance and disappears when there are countervailing reasons for requiring one to be bound while the other is not. In the situation dealt with in Subsection (1), there is no substantial unfairness to the injured person in binding him by an unfavorable decision although the indemnitee is not bound by one favorable to him, since he should be required to present his full case against the indemnitor. On the other hand, to make a favorable judgment binding on the indemnitee would be unfair either to the indemnitor or to the indemnitee. If a judgment against the claimant were not res judicata in a subsequent action against the indemnitee, either the indemnitee would be required to pay without the possibility of indemnity against the indemnitor, or the indemnitor would be required to make indemnity for a claim which, in an action by the claimant against him, had been found not to exist. Obviously it would be unfair to the indemnitee to bind him by a judgment for the claimant in the first proceeding, since he was not a party."

█ V. Since CB&Q was by law primarily liable to the public, jointly with defendant here, for any negligence in either train operation or crossing and track maintenance, it would be quite immaterial, even if it were true, that the first action was based only on alleged negligent acts of CB&Q and the instant case only on alleged failure of defendant here to maintain a safe crossing. Both issues are parts of the same cause of action. The judgment in the earlier case completely absolved the CB&Q from all liability as a tort-feasor. Plaintiff could not maintain a second action against it by specifying other acts of negligence as the cause of his same injuries. The injured party may not thus

split his cause of action. 1 C.J.S., Actions, section 104b, citing Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069; 1 Am. Jur., Actions, section 111, page 493, and citations note 20; McKnight v. Minneapolis Street Ry. Co., 127 Minn. 207, 149 N.W. 131, L.R.A. 1916D 1164, and annotation page 1167.

■ It is true plaintiff did not bring this second action directly against the CB&Q. But defendant has brought CB&Q in (under rule 33(b), Iowa R.C.P.) as a third party defendant to defend the same cause of action which it has already successfully defended. This procedure was proper. CB&Q has pleaded the prior adjudication as a bar to any recovery against it. Denial of its plea would be, in effect, to grant plaintiff a new trial of an issue already finally adjudicated against him. To sustain the plea as to the CB&Q and deny it as to defendant would deprive defendant of the benefit of its contract with the CB&Q for indemnity. Plaintiff by bringing action against the indemnitor has had his day in court and has been defeated because of his failure to prove freedom from contributory negligence.

Plaintiff in reply brief and argument states the situation thus: "Joint tort-feasors are not privies and when between themselves their liability is primary and secondary, and a judgment in favor of one may bar an action against the other, it is not because they are privies but because they have placed themselves within one of the exceptions to the rule requiring privity set forth in sections 93 to 111 of the Restatement." We think they have done so here.

Plaintiff's argument under this postulate seems based on what we have already pointed out as unsound, the assumption that there were two causes of action as to one of which the liability of the CB&Q was primary and as to the other its liability was secondary. The CB&Q, as defendant in the first case, lent some credence to this theory by disclaiming liability for any negligence in crossing maintenance. Had the result in that earlier case been affected by that contention it might well be held here that the CB&Q could not now claim the benefit of the prior adjudication. But the result was in no way so affected. It had no relation to the specifications of negligence but was based solely and squarely on the issue of freedom from contributory negli-

gence. The result would have been the same regardless of any negligence of the CB&Q, whether in train operation or track maintenance. There was no final judgment on the issue of CB&Q's negligence or its liability for crossing maintenance. 50 C. J. S., Judgments, section 702.

VI. We have studied plaintiff's able argument with care. What we have said seems to answer its contention without specific discussion of numerous authorities cited. Practically all announce principles that are sound. Plaintiff refers to the complexity of the subject of prior adjudication and to the fact that 474 pages are devoted to its discussion by the Restatement. The subject is complex only because of the myriad fact situations in which it may be and has been invoked. But where, as here, the relationship of the parties can be clearly defined we think the result is clear and inevitable. Defendant's stake in the result of the earlier case entitled it to plead that result as a bar here. The judgment is affirmed.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.