Floyd GOOLSBY, Plaintiff,

v.

Zella M. DERBY, administrator of the Estate of Carl W. Derby, a/k/a W. Carl Derby, deceased, Defendant.

Zella M. DERBY, administrator of the Estate of Carl W. Derby, a/k/a W. Carl Derby, deceased, Cross-Petitioner-Appellant,

v.

E. G. STAATS & COMPANY, Inc., Defendant to Cross-Petition-Appellee.

No. 54315.

Supreme Court of Iowa.

Sept. 9, 1971.

Dull, Keith & Beaver, Ottumwa, and Hugh W. Lundy, Albia, for cross-petitioner-appellant.

John N. Moreland, Ottumwa, for defendant to cross-petition-appellee.

MASON, Justice.

This is an appeal from the trial court's ruling sustaining the motion for directed verdict made by E. G. Staats & Company, Inc., defendant to a cross-petition, at the close of the evidence of cross-petitioner, Zella M. Derby, administrator of the estate of Carl Derby, her deceased husband. It presents the question whether this court should make an exception to the general rule now followed in Iowa that a judgment operates as a bar to relitigation of the particular facts or issues in a different cause of action only where parties to the litigation are identical or in privity.

Around 8:45 a. m. January 9, 1966, a collision occurred on U. S. Highway No. 34 approximately four and a half miles west of Albia in Monroe county between an automobile owned and operated by Stanley Van Dyke Swan in which Floyd Goolsby was riding as a passenger and an automobile owned and operated by Carl W. Derby. At the point in question highway 34 is intersected at right angles by a gravel road. Immediately before the accident Derby had been proceeding west from Albia on highway 34 followed some distance by the Swan car. At the intersection Derby left the paved highway, made a "U" turn on the graveled road and came back onto the pavement evidently to return east to Albia. As he approached the intersection, Swan pulled to the left of the center line. The impact occurred in the south half of highway 34.

Goolsby and Swan, employees of E. G. Staats & Company, Inc., en route on a business trip for their employer at the time of the accident were both injured. Derby sustained injuries which resulted in his death within a few minutes.

Two law actions for damages grow out of the accident. The initial proceedings were instituted by Floyd Goolsby against the administrator of the Derby estate for injuries resulting from the impact. He predicated his right to recover on the theory Derby's alleged negligence as specifically set out was the proximate cause of the accident.

Derby's administrator in answer admitted some allegations, denied others and in separate divisions set forth two affirmative defenses. In one she alleged Goolsby's negligence as specified was a proximate cause of the collision, injuries and damages of which he complains. In the other, she asserted Swan's negligence in specified particulars was the sole proximate cause of the collision, injuries and damages for which Goolsby seeks recovery.

In reply Goolsby denied those allegations bearing on his negligence as a proximate cause and those in which it was asserted

Swan's negligence was the sole proximate cause of the accident.

This phase of the litigation will be referred to as suit I.

The administrator filed counterclaim against Goolsby which is not involved in the issue before us. She also moved for leave to bring in E. G. Staats & Company, Inc. as a new party defendant to the estate's proposed cross-petition. Rule 33, Rules of Civil Procedure. The motion was granted.

In the cross-petition the administrator alleged specific acts of negligence against Swan as a proximate cause of the collision; Swan was an employee of Staats and in the scope of his employment at the time of the accident; and his alleged negligence proximately causing the collision was imputable to the employer. In one division she sought damages for loss to her husband's estate and in another, asked indemnification or contribution against Staats.

Staats in answer to the cross-petition admitted some allegations and denied others. In amendment the company alleged as an affirmative defense specified acts of Derby's negligence asserted to be the proximate cause of the collision and his death.

The aspect of the litigation involving the issue presented by the estate's cross-petition and Staats' answer will be referred to as suit II.

At pretrial conference the estate's motion for a separate and later trial of the issues presented in suit II was sustained without resistance. Rule 186, R.C.P.

Trial to a jury in October 1967 in suit I resulted in a plaintiff's verdict of $12,643.

January 26, 1968, Staats in answer to the estate's amended cross-petition alleged return of the favorable plaintiff's verdict in suit I and that no appeal was taken and the judgment satisfied. The company also alleged that the jury by its verdict found the sole and proximate cause of the accident was Derby's negligence and therefore the administrator is estopped from pursuing further satisfaction against either Goolsby or Staats.

Derby admitted the trial and verdict in suit I, that no appeal was taken, and satisfaction of the judgment.

November 28, 1969, before trial in suit II, Staats filed "admission of law point" admitting the negligence of Swan, if any, was chargeable to and imputable to it as his employer. Rules 127 and 128, R.C.P.

After selection of the jury and completion of the opening statements in suit II, Staats moved the court to rule that *the finding made by the jury* in suit I had determined the decedent, Carl Derby, negligent as a matter of law in the operation of his motor vehicle at the time and place alleged in the petition and cross-petition. Staats asserted in this motion such jury determination of Derby's negligence was the law of the case since the jury verdict necessitated a finding such negligence was the proximate cause of the collision and therefore his estate could have no recovery against Staats. It further alleged the matter was res judicata, the administrator estopped from attempting to show in this proceeding her decedent's freedom from negligence and therefore, her action should be dismissed.

At some stage in the proceedings, not entirely clear from the record, it had been stipulated that the court take judicial notice of the complete file of the proceedings in suit I—Goolsby's action against the Derby estate.

The court reserved ruling until the close of cross-petitioner's evidence. At that time Staats renewed its motion asserting again by reference the ground alleged in motion made before trial and added as an additional ground the contention *the evidence when viewed in the light most favorable to plaintiff* showed as a matter of law decedent, Carl Derby, was negligent in the operation of his motor vehicle at the time of the accident in question.

The foregoing is a fair description of the state of affairs in which we consider the administrator's assignment of errors. Summarized, she contends the trial court erred, (1) in sustaining Staats' motion for directed verdict made at the close of cross-petitioner's evidence on the ground the administrator's decedent was negligent, as a matter of law, if the court so held and (2) in directing a verdict on the ground the administrator was precluded from litigating anew in suit II the question of her decedent's negligence; she was estopped from further pursuing satisfaction from defendant, E. G. Staats & Company, Inc; and the estate was bound by the decisions of the jury in suit I finding the accident in question was proximately caused by Derby's negligence.

In giving this detailed description we have used "a proximate cause" and "the proximate cause" interchangeably, not by selection but in accordance with the use of the term in various portions of the pleadings and motions.

I. In connection with the estate's first assignment of error the administrator points out Staats had urged two grounds as a basis for a directed verdict—one in motion before trial and one in motion at the close of Derby's evidence. She maintains in written argument, "it is not clear that the court's ruling is based on that portion of the motion to direct the verdict urging contributory negligence as a matter of law." For this reason she argues this is not a case where a directed verdict resting on contributory negligence of plaintiff's decedent (Derby) is justified from a review of the evidence in the record since the most favorable construction that could be placed on the evidence from Staats' standpoint is that a jury question is generated on this issue.

The administrator's uncertainty may be predicated to some extent on the trial court's failure to rule on the motion to direct as provided in rule 118, R.C.P. We set out the rule:

"A motion, or other matter involving separate grounds or parts, shall be disposed of by separate ruling on each and not sustained generally."

This is a portion of the Advisory Committee's comment following the rule: " * * * Both the appellate court and the parties should be entitled to know what grounds are upheld, thus shortening the later phases of the matter. No one is harmed by this."

Trial courts would be well advised to follow the rule even though we have not, as yet, reversed any case for noncompliance.

Perhaps another reason for the administrator's expressed uncertainty is Staats' contention asserted in motions and in written argument here that the evidence viewed in the light most favorable to the administrator shows as a matter of law the decedent was negligent and such negligence was a proximate cause of the accident in question. Staats' contention in this regard is without merit and is neither the basis for the trial court's ruling nor our decision in this matter.

We quote from the trial court's ruling:

"It is the holding and order of this court that plaintiff, Zella M. Derby, administrator of the estate of Carl W. Derby, is now precluded from litigating anew in this suit the question of the negligence of Carl W. Derby, that plaintiff is estopped from further pursuing satisfaction from defendant E. G. Staats; that said defendant is bound by the decision of the jury in the October, 1967 trial finding that the accident in question was the proximate cause of the negligence of Carl W. Derby.

"It is therefore ordered that defendant's motion be and the same is hereby sustained. Plaintiff's petition is dismissed and the court now directs the jury to return a verdict for the defendant, E. G .Staats, Inc."

It is clear to us from the quoted portion of the court's ruling, particularly in view

of the cases and law review article relied on, the ruling is not based on a finding the evidence had established Derby's negligence as a matter of law but rather on the principle his administrator was precluded from relitigating in suit II the question of her decedent's negligence by reason of the jury's earlier finding in suit I his negligence was a proximate cause of the collision.

This basis for the court's ruling gives rise to the question presented by this appeal.

II. It has been meritoriously suggested that in the interest of clarity it is appropriate to define terms used in this opinion.

We draw from Comment Note—Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment, by E. H. Schopler, an annotation in 31 A.L.R.3d 1044–1099 and Allan D. Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L.Rev. 27, in reaching a determination of the issue.

The phrase "defensive use" of the doctrine of collateral estoppel is used here to mean that a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense.

On the other hand, the phrase "offensive use" or "affirmative use" of the doctrine is used to mean that a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim.

In other words, defensively a judgment is used as a "shield" and offensively as a "sword."

The phrase "stranger to the judgment" is used to signify a party to the proceeding involving an issue as to the collateral estoppel effect of a former judgment who was neither a party to, nor in privity with, "a party to the judgment."

The author of the comment note, 31 A.L.R.3d at 1048, suggests:

"The phrase 'stranger to the judgment' seems more appropriate than the phrase, more often used, 'stranger to the action in which the judgment was rendered.' While, ordinarily, a stranger to this action is also a stranger to the judgment, nevertheless conceivably, a party to a multiplaintiff or multidefendant action may effectively have been dismissed from the case, or having discontinued participation therein, before the judgment was rendered, and then he is not a party 'to the judgment' even though he was a party 'to the action.'"

Professor Vestal, for clarity, uses "claim preclusion" and "issue preclusion" in place of the generic historical term, res judicata. He uses "claim preclusion" to mean that further litigation on the claim is prohibited; while "issue preclusion" is used to mean that further litigation on a specific issue is barred. We have adopted the suggested definitions for this opinion.

We have also adopted for purposes of decision Mr. Schopler's suggestion that the phrase "rule of mutuality" be used as referring to the requirement that as a general proposition a judgment can operate as collateral estoppel only where all parties to the proceeding in which the judgment is relied upon were bound by the judgment. On the other hand, the rule abandoning in whole or in part the requirement of mutuality of estoppel will have reference to "nonmutuality rule" or the doctrine of "unilateral estoppel."

III. Traditionally, before collateral estoppel is applied, the court looks for three prerequisites: (1) identity of issues raised in the successive proceedings, (2) determination of these issues by a valid final judgment to which such determination is necessary, and (3) identity of the parties or privity, often referred to as "mutuality of es-

toppel." 31 A.L.R.3d 1044, 1047. A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase. In re Estate of Marty, 256 Iowa 74, 79, 126 N.W.2d 303, 306 and Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, 19 Cal.2d 807, 810–811, 122 P.2d 892, 894; 31 A.L.R.3d 1061. Under the "mutuality of estoppel" rule, a stranger to the judgment, one not a party to, nor in privity with, a party to the judgment, was not bound by the judgment, and subsequently was not entitled to rely on its effect in a subsequent suit. 31 A.L.R.3d 1060.

In Third Missionary Baptist Ch. of Davenport v. Garrett, 158 N.W.2d 771, 774–775 (Iowa 1968) is this statement of the doctrine of res judicata as presently followed in Iowa:

"As stated * * * [citing authority]: 'The doctrine of res judicata is well established and it may exist under two situations: (1) as a bar to a second action upon the cause of action, and (2) as a bar to relitigation of particular facts or issues in a different cause of action. But in both instances, the parties thereto must be identical or in privy thereto. As said * * * [citing authority], no one can be barred by res judicata until he has had " 'full legal opportunity for an investigation and determination' " of the matter. * * * [citing authorities].' "

Staats, in seeking to uphold the trial court's ruling, does not ask that we abandon the requirement of mutuality of estoppel by judgment as a prerequisite to the availability of the doctrine of collateral estoppel to a stranger to the judgment but only that we modify the doctrine to the extent of premitting the use of collateral estoppel in order to allow a party to defensively prevent relitigation of an issue already determined.

As stated, the Derby estate's action is based on the theory Swan's alleged negligence, which if established is admittedly imputable to E. G. Staats & Company, was a proximate cause of the collision and Derby's death. Staats plead and relies upon Derby's negligence being a proximate cause of the collision as a complete defense. Section 619.17, The Code. Under this affirmative defense Staats thus had the burden of proving both decedent's negligence and a causal connection between such alleged negligence and the collision.

In suit I the court told the jury in order to find for Goolsby they must determine Derby was negligent; that his negligence, if any, was a proximate cause of the collision; that the administrator had failed to establish Goolsby was negligent in a manner which proximately caused the collision; that Swan's negligence, if any, (chargeable to Staats in second suit) was not to be imputed to Goolsby; that Goolsby could not recover if the administrator of the Derby estate has proven its affirmative defense both that Swan was negligent and that such negligence was the sole and only proximate cause of the accident.

By returning a verdict for plaintiff in the first suit, the jury found: (a) no contributory negligence on part of Goolsby, (b) that Swan's driving, if negligent, was not the sole and only proximate cause of the accident, and (c) that Derby's conduct was both negligent and a proximate cause of the accident.

Since there may be more than one proximate cause of an injury, Andrews v. Struble, 178 N.W.2d 391, 398 (Iowa 1970), it was not necessary in order to sustain the jury's verdict imposing liability on Derby in suit I that it had determined his negligence to be the sole cause of the collision. Henneman v. McCalla, 260 Iowa 60, 67, 148 N.W.2d 447, 452.

Staats' contention asserted in answer to the estate's amended cross-petition and in

argument here that the jury by its verdict found the sole and proximate cause of the accident to be Derby's negligence is untenable.

If the trial court was correct in its ruling it is not for the reason advanced by Staats in this contention.

IV. The basic principle for the court's ruling that Derby's administrator was precluded from relitigating in suit II the issue of her decedent's conduct being both negligent and a proximate cause of the collision since those issues were determined adversely to the estate by the jury's verdict in suit I involves the question of "issue preclusion" and "defensive use" of the doctrine of collateral estoppel.

The foundation theory on which the doctrine of issue preclusion rests is that the parties ought not to be permitted to litigate the same issue more than once. Phillips v. Cooper, 253 Iowa 359, 360, 112 N.W.2d 317, 318.

On the other hand, the doctrine of collateral estoppel is predicated on the philosophy that a party should have a full and fair day in court to be heard on the issues involved in this cause of action.

We have previously stated the meaning of the phrase "defensive use" of the doctrine for purposes of this decision.

For all practical purposes, the rule of mutuality is coextensive with the requirement that the plea of issue preclusion is available only to a party to the judgment and his privies. This rule variously expressed has steadily been adhered to in Iowa. Kunkel v. Eastern Iowa Light & Power Co-op., 232 Iowa 649, 5 N.W.2d 899; Aultman v. Meyers, 239 Iowa 940, 33 N.W.2d 400; In re Estate of Ramsay, 240 Iowa 50, 35 N.W.2d 651; State v. Boland, 241 Iowa 770, 41 N.W.2d 727; Young v. O'Keefe, 248 Iowa 751, 82 N.W.2d 111; Stucker v. County of Muscatine, 249 Iowa 485, 87 N.W.2d 452; In re Estate of Richardson, 250 Iowa 275, 93 N.W.2d 777; Lynch v. Lynch, 250 Iowa 407, 94 N.W.2d

105; Trustees of Green Bay Etc. v. Alexander, 252 Iowa 801, 108 N.W.2d 593; Phillips v. Cooper, 253 Iowa 359, 112 N.W.2d 317; Crawford v. City of Des Moines, 255 Iowa 861, 124 N.W.2d 868; In re Estate of Marty, 256 Iowa 74, 126 N.W.2d 303; In re Estate of Kaldenberg, 256 Iowa 388, 127 N.W.2d 649; National Farmers Union etc. Co. v. Nelson, 260 Iowa 163, 147 N.W.2d 839; and Bloom v. Steeve, 165 N.W.2d 825 (Iowa 1969). See also Restatement, Judgments, section 93.

Jordan v. Stuart Creamery, Inc., 258 Iowa 1, 9–10, 137 N.W.2d 259, 263–264, in dealing with the question of identity of actions or issues and identity of the parties or their privies, has this statement:

" * * * [W]e have recognized there are exceptions to the general rule that an adjudication does not operate as an estoppel except between parties or their privies. In Macedonia State Bank v. Graham, 198 Iowa 12, 14, 199 N.W. 248, 34 A.L.R. 148, we applied the doctrine where the liability in tort of a party depended on the culpability of another party who had already been adjudged not culpable. In Hawley v. Davenport, Rock Island and Northwestern Railway Co., 242 Iowa 17, 45 N.W.2d 513, a judgment in favor of defendant indemnitor on the ground of plaintiff's contributory negligence as a matter of law was held to be res judicata in a subsequent suit against the indemnitee.

"On pages 22 and 23 of 242, on page 516 of 45 N.W.2d, we state the limitation of the doctrine of res judicata to parties or their privies 'has a broadening exception to the effect that "persons who, although not parties or privies, were so connected in interest * * * with plaintiff or defendant in the former action that the judgment may be regarded as virtually recovered for them, may avail themselves of such judgment as res judicata in a subsequent suit." 50 C.J.S. Judgments § 757. * * * It may be considered either an extension of the doctrine of res judicata or as a redefini-

tion of the term "privy". Its classification is unimportant. * * *'"

The precise question presented by the assertion that litigation of an issue is precluded because of an earlier adjudication under the present circumstances is one of first impression for this court.

Two of the three prerequisites heretofore mentioned for application of the strict rule of mutuality are present. The issue of Derby's negligence as a proximate cause of the accident was involved both in suit I and suit II and the issues raised in this respect are identical in both proceedings. We repeat, Goolsby's action in suit I was based on the theory Derby's conduct was both negligent and a proximate cause of the collision. A determination of those issues was necessary to justify the verdict in suit I upon which a valid final judgment was rendered for Goolsby.

Staats, although brought into the controversy as defendant to Derby's cross-petition, discontinued participation in suit I as a result of the pretrial order granting Derby a later and separate trial on the claim asserted by the administrator.

The rule requiring mutuality of estoppel has been much eroded in recent years. However, jurisdictions which have abandoned the rule of mutuality, whether in whole or in part, agree, expressly or by implication, that the doctrine of collateral estoppel can be invoked by a stranger to the judgment only against one who was a party, or in privity with a party, to the judgment and had a full opportunity in the prior action to litigate the relevant issue, 31 A.L.R.3d 1051–1067. In this connection this statement by the court in Stucker v. County of Muscatine, 249 Iowa 485, 493, 87 N.W.2d 452, 457, is pertinent:

"* * * Once a party has had an opportunity to be heard, he has had his day in court and cannot thereafter be heard to complain, especially if it can be said he had the opportunity to be heard on decisive merits."

The most important factors in determining availability of the doctrine of collateral estoppel notwithstanding a lack of mutuality or privity are whether the doctrine of collateral estoppel is used offensively or defensively, whether the party adversely affected by collateral estoppel had a full and fair opportunity to litigate the relevant issue effectively in the action resulting in the judgment. 31 A.L.R.3d 1052.

Cases containing expressions of positions pro and con on the question of advisability of adhering to the strict rule of mutuality as opposed to abandoning the rule in whole or in part are collected and discussed in the case note in 31 A.L.R.3d 1044 and Professor Vestal's article in 50 Iowa L.Rev. Both were acknowledged by the trial court.

Courts are generally reluctant to make exception to the mutuality rule where a party is urging the offensive use of collateral estoppel to recover damages. Our research discloses perhaps four jurisdictions so holding—Nevada, New York, Wisconsin and District of Columbia. The courts have been more liberal with the exception to the mutuality rule where collateral estoppel is proposed for defensive purposes to bar an action. Such is the present case. Jurisdictions allowing this exception are collected in 31 A.L.R.3d at 1072. Jurisdictions in addition to Iowa denying any exceptions to the rule to date are cited at 1062 of the annotation.

It will be recalled Staats had alleged in answer Derby was negligent and his negligence was a proximate cause of the accident. The company is now seeking to rely upon the jury verdict in suit I finding Derby's conduct was both negligent and a proximate cause of the collision as conclusively establishing in its favor those issues which Staats had to prove as elements of the asserted affirmative defense. This, we have said, is "defensive use" of the doctrine of estoppel—one of the important factors for determining availability of the doctrine of collateral estoppel.

In suit I Goolsby's claim against Derby's estate was based on the allegation Derby's negligence was a proximate cause of the collision. The administrator in making defense in suit I had full and fair opportunity to effectively litigate those relevant issues. The jury's verdict was against the estate on both issues. The second factor, a full fair day in court, is thus present.

The administrator's argument that Swan's conduct in being on the wrong side of the highway at the time of impact was a violation of section 321.304(2), The Code, and he was therefore negligent per se does not reach the question.

Our study of the decisions in support of strict adherence to the rule of mutuality and those advocating abandonment in part as well as the efforts of the legal writers convince us that under the circumstances the trial court correctly precluded Derby's administrator from relitigating in her claim for loss to her husband's estate the issue of her decedent's conduct being both negligent and a proximate cause of the accident in view of the prior determination of those issues adversely to the estate in suit I.

■ V. Applying collateral estoppel to bar the administrator's action against Staats for loss to her husband's estate in no way alters the recognized right to sue for contribution where no immunity exists.

As pointed out, the administrator in one division of her cross-petition asked indemnification or contribution against Staats.

■ Although the administrator's assigned error attacking that portion of the court's ruling estopping her from further pursuing satisfaction from E. G. Staats & company is broad enough to challenge the court's ruling on her claim for contribution, the matter was not argued and is therefore deemed waived. There is nothing for review in this respect.

The ruling of the trial court is therefore —Affirmed.

All Justices concur except BECKER, J., who dissents and REYNOLDSON, J., who takes no part.

BECKER, Justice (dissenting).

I respectfully dissent.

I. The majority recognizes that one of the "most important factors in determining availability of the doctrine of collateral estoppel is * * * whether the party adversely affected * * * had a full and fair opportunity to litigate the relevant issue effectively * * *."

In stating its position on collateral estoppel the majority of the Court of Appeals of New York stated in Schwartz v. Public Administrator of Co. of Bronx, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969):

"* * * New York Law has now reached the point where there are but .two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling."

It seems to me that Justice Bergan's dissent in the same case goes to the second requirement. When a full and fair opportunity to contest the issue is considered the circumstances under which the issue was tried and the posture of the parties is important—often decisive. In this respect the position of the insurance carrier as an unnamed party who is in a position to control the defensive posture of the case must be considered. See discussion at 39 Iowa L. Rev. 255, 293.

Where the party has not in fact had his day in court he should not be precluded. If, as seems to be the case here, the issues have been presented on behalf of one of the parties by the insurance carrier whose

posture is wholly defensive,[1] this should not necessarily preclude the party from litigating his offensive position either in the same case or in a later case. Justice Bergan's dissenting opinion in Swartz v. Public Administrator of Co. of Bronx, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 964, 967, 246 N.E.2d 725, 732, 734 (1969), points up the problem and rejects the easy solution of throwing the party out of court. The following quotation is apropos:

> "Law is more than a congeries of neat logical packages quite consistent with each other. It is more essentially an ongoing method of reaching pragmatic approximations of fairness in myriads of human situations where absolutes of right and wrong either do not exist at all or rest on ideas only theoretically related to real life situations. * * *

> "Judge Breitel noted this effect in his dissent in [DeWitt v. Hall] Hall (19 N.Y. 2d 141, 149, 278 N.Y.S.2d 596, 603, 225 N.E.2d 195, 200 supra): 'As for the offsetting disadvantages of duplicating the trial of issues in litigation, this does not weigh heavily in measuring the balance of convenience. The present rules in this area have subsisted for a long time and there is no great amount of such duplicated litigation.' "

See also the Arizona Court of Appeals' reasoning when it declined to allow the "offensive" use of collateral estoppel:

> "* * * While this court believes that our system of justice has no peer in this fallible world, nevertheless, it is unable to consider that our trial processes unerringly discover Truth. The selection of the judge and jury, the choice of counsel, the availability of witnesses, the manner of the presentation of their testimony, the dynamics of the rapport between witnesses and fact-finder, and the personalities and appearances of the parties as they impress the fact-finder in various ways, are all matters that defy scientific analysis, are affected by fortuitous circumstances and variously determine the outcome of a contest conducted in the courts of this country." Spettigue v. Mahoney, 8 Ariz.App. 281, 445 P.2d 557, 562 (1968).

One might well add that the inter-relationship between the parties is important. This case is a good illustration. Goolsby could not sue his employer (cross-defendant here) and elected not to sue his fellow employee. As the case was first tried the jury had to find against the Derby estate or force the innocent passenger to go uncompensated.

The issues between Derby and cross-petitioner pose an entirely different problem to the jury. Here the case is between the two real protagonists, one or both of whom was at fault.[2] A verdict for the Derby estate would be logically inconsistent with the former verdict but it would not necessarily be either unjust or irrational.

II. It seems to me this case raises some serious problems concerning separate trials. Here the court decided the issue should be litigated separately. It is true this was on Derby's application. The result is that the cross-petitioner's offensive posture against a third party was destroyed by reason of the issue preclusion—claim preclusion dichotomy. The impact of this case on the decision to separate issues for independent trial has not been fully considered.

Cases of this type do not usually involve trial of different issues in the same case. Usually two or more cases are involved. Two law review articles, Impacts of Defensive and Offensive Assertion of Collateral Estoppel, 35 George Washington L.Rev. 1010, 1029 and Estoppel by Rule: The

1. Two sets of lawyers for the estate are involved. It is not clear whether one set is wholly paid by the insurance carrier.

2. The derivative nature of cross-defendant's exposure is immaterial here.

Compulsory Counterclaim, 39 Iowa 255, 292, speak of the desirability of getting all issues and, if possible, all parties into one action. The authors do not consider what should happen when, as here, the parties are in fact all brought together but for some extraneous reason the issues or parties are properly tried separately. In such a case is the defensive posture thus forced on one party to bind him for all time as to his offensive position in relation to different parties? If so, the decision to allow separate trial of issues in a case like this one has unsuspected and unlooked for consequences.

The pretrial order read in part as follows:

"(1) Pursuant to the motion of the defendant, not resisted by the plaintiff, the Court hereby orders a separate and later trial of the issues raised by the cross-petition of the defendant filed herein, and the answer of the cross-petition defendant, all as permitted by R.C.P. 186."

Derby had a right to assume it would be able to litigate its claim at a later trial. The court so ordered in clearest possible terms. Cross-defendant consented to this arrangement. This valuable right to later litigation should not be taken away on the collateral estoppel theory. If any estoppel is imposed it should be against cross-defendant which consented to the arrangement.

The very basis for collateral estoppel is not present here. It is to save multiple trials. The case was so pled as to allow a consolidation. The court made a conscious choice to forego this economy. What is the real rationale for now imposing collateral estoppel? I can see none.

I am unaware of any case that goes into this matter. Perhaps the accident of consolidated litigation, followed by separate trials, should not affect the final decision.

Yet, I think it is an additional factor weighing against issue preclusion.

Under the circumstances shown here I would allow cross-petitioner to litigate its claim against cross-defendant.