**Lucille MIZER, Appellee,**

v.

**STATE AUTOMOBILE AND CASUALTY UNDERWRITERS, a Corporation, Appellant.**

**No. 54480.**

Supreme Court of Iowa.

Feb. 25, 1972.

Timothy J. Walker and Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellant.

Thomas L. McGullough, Sac City, for appellee.

MASON, Justice.

Plaintiff, Lucille Mizer, sustained personal injuries and property damages September 16, 1968, from a collision between an automobile operated by her and another owned by Harold Crabtree and driven by Terrell E. Crabtree. May 9, 1959, she instituted a law action against Crabtrees to recover on the theory specified acts of their negligence were the proximate cause of the collision. Trial of that lawsuit resulted in a plaintiff's verdict on November 4, 1969, for $7250. The judgment entered thereon was not satisfied as the Crabtrees were uninsured. That action will hereafter be referred to as suit I.

At the time of the collision, plaintiff was insured under a policy issued by defendant, State Automobile and Casualty Underwriters, which afforded the insured as defined therein protection against uninsured motorist for bodily injury.

In December 1969 plaintiff commenced a law action against defendant insurance company asking judgment for $10,000, the policy limits. She alleged substantially the same facts as were set out in suit I, but added, (1) plaintiff was insured at all material times by defendant insurance company, (2) such insurance included uninsured motorist coverage to policy limits of $10,000, (3) the Crabtrees carried no liability insurance, and (4) plaintiff is covered under the terms of the policy and thereby is entitled to judgment for $10,000. This action will be referred to as suit II.

The insurance company in answer admitted plaintiff's policy was in full force and effect at all times material; that $10,-000 coverage was provided under the uninsured motorist portion of the policy; and operation of the automobiles by plaintiff and Crabtrees at the time and place alleged. Defendant denied all other allegations of plaintiff's petition including the cause of the collision and damages claimed to have resulted therefrom. In separate divisions defendant asserted two lines of affirmative defense alleging the judgment entered in favor of plaintiff against Crabtrees was a bar to the maintenance of suit II since the matters alleged in her petition as the basis for her claim against the insurance company had been fully adjudicated and settled by the judgment in suit I and plaintiff is collaterally estopped from maintaining the present action as the issues had been fully adjudicated and finally settled by the judgment in suit I.

Plaintiff in reply alleges defendant is estopped from asserting that the judgment in suit I is binding on the insurance company in suit II. In her amended reply plaintiff focuses on this language in defendant's insurance contract: "No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

Plaintiff further alleged that although she tried to obtain the company's consent to institute suit I, it refused and insisted upon arbitration in accordance with the terms of the uninsured motorist indorsement.

In other words, plaintiff in effect asserts in reply to the affirmative defenses defendant is estopped by its policy provisions from proposing suit II is precluded as a matter of law on the basis of res judicata as to cause of action and collateral estoppel as to amount of damages.

On April 24, 1970, defendant filed motion to adjudicate law points. Rule 105, Rules of Civil Procedure. The court was asked to hear and determine the legal questions of res judicata and collateral estoppel raised by defendant's affirmative defenses.

The court held the insurance company's policy provision, as set out above, was contractually binding on both insured and insurer, and therefore judgment in suit I would not preclude or limit action in suit II.

Immediately preceding voir dire examination, plaintiff moved in limine to exclude from evidence any reference to the amount awarded plaintiff by verdict in suit I. The trial court sustained plaintiff's motion.

Before plaintiff rested her case, defendant made an offer of proof as to the prior litigation and jury verdict in suit I. Plaintiff's objection thereto was sustained. Finally, the case was submitted to the jury which awarded plaintiff a verdict for $8500.

After its motion for new trial was overruled, defendant appealed asserting the trial court erred: (1) in failing to find the judgment in suit I was res judicata to plaintiff's cause of action in suit II, (2) in failing to find plaintiff was collaterally estopped to maintain suit II by reason of her judgment in suit I, and (3) in sustaining plaintiff's motion in limine.

I. In seeking reversal the insurance company does not contend, either in its pleadings or argument, that its written consent to the prosecution of suit I or submission to arbitration in accordance with the policy provisions is a condition precedent to its liability. See Annot., 24 A.L.R 3d 1325 relating to validity and enforceability of arbitration provisions in uninsured motorist indorsements. Rather, defendant admits its liability under the policy by reason of Crabtrees' culpability having been established in suit I and its liability for damages to the extent established in that suit in this statement from its brief and argument:

"In the case before the court there is no question that pursuant to its policy of insurance, State Automobile and Casualty Underwriters, defendant-appellant, was liable to plaintiff-appellee if the uninsured motorists, that is, defendants Crabtree, were culpable, and, then only to the extent that plaintiff-appellee was and is entitled to recover against the uninsured motorists."

In this connection, defendant points out the judgment in suit I was in existence at the time plaintiff initiated suit II; the judgment in suit I was entered after a full and fair hearing on the merits of plaintiff's claim for damages against the Crabtrees by a court of competent jurisdiction without fraud or collusion; and plaintiff's theory of defendant's liability in suit II under the coverage afforded for bodily injury caused by uninsured motorist is predicated upon culpability of Crabtrees, the uninsured motorist in suit I.

Thus, the defenses of res judicata and collateral estoppel are not now being urged to escape liability per se, but only to avoid relitigation of the issue of damages which could conceivably be found greater than $7250.

Although defendant sets out its first and second assignments of error in two distinct divisions, the effect of both arguments is that, "The technical distinctions drawn between the terms res judicata, estoppel by judgment, collateral estoppel or between estoppel by judgment and estoppel by verdict would have no practical useful application in this case." We need not pursue this contention further but for the distinction between the doctrines see Cream Top Creamery v. Dean Milk Company, 383 F. 2d 358, 361–363 (6 Cir.).

Defendant, in its first and second assignments, urges a liberal application of res judicata and collateral estoppel doctrines, which would presumably now entail an interpretation of Goolsby v. Derby, 189 N. W.2d 909 (Iowa 1971), which dealt with the questions of "claim preclusion" and "issue preclusion." Yet, it is clear the trial court, perhaps accepting defendant's liberal application arguendo, found defendant estopped by the terms of the insurance contract—a hurdle defendant attempts to cross in its third assignment. The court stated:

"The court adjudicates the law to be that such a provision in the insurance policy is binding upon the insurance company and the insured and that, therefore, any previous or prior judgment is not res judicata nor is the plaintiff estopped from maintaining this action." The trial court does not base its adjudication on lack of privity, identity of issues, or identity of causes. Instead, its finding is based on terms of the insurance contract set out, supra, relating to consent to sue.

■ Most of defendant's contentions outlined in its brief and argument have been weighed and addressed by the court in Goolsby v. Derby, supra. For instance, defendant expends considerable effort in supporting its position as privy to suit I. However, perfect symmetry of parties is no longer a prerequisite to application of collateral estoppel, or "issue preclusion." Goolsby v. Derby, 189 N.W.2d at 916–917.

■ In the cited case, 189 N.W.2d at 914, we were asked to modify the requirement of mutuality of estoppel by judgment as a prerequisite to availability of the doctrine of collateral estoppel to a stranger to the judgment to the extent of permitting the use of collateral estoppel in order to allow a party to defensively prevent relitigation of an issue already determined.

In Goolsby, two of the three prerequisites which the court looks for before applying collateral estoppel, namely identity of the issues raised in the successive proceedings and determination of those issues by a valid, final judgment to which such determination is necessary, were present. In the opinion, 189 N.W.2d at 915–916, this statement of the law is expressed:

"The foundation theory on which the doctrine of issue preclusion rests is that the parties ought not to be permitted to litigate the same issue more than once. * * * [citing authorities]

"On the other hand, the doctrine of collateral estoppel is predicated on the philosophy that a party should have a full and fair day in court to be heard on the issues involved in this cause of action.

"* * * * * *

"The most important factors in determining availability of the doctrine of collateral estoppel notwithstanding a lack of mutuality or privity are whether the doctrine of collateral estoppel is used offensively or defensively, whether the party adversely affected by collateral estoppel had a full and fair opportunity to litigate the relevant issue effectively in the action resulting in the judgment. 31 A.L.R.3d 1052."

Plaintiff insists one prerequisite for application of collateral estoppel mentioned is not present since she did not have a full and fair opportunity to effectively litigate in suit I the full extent of her damages sustained by Crabtrees' negligence. She contends she had physical problems from her injuries not present or evident at the time of trial in suit I which were developed in suit II.

Examination of the court files certified to us discloses plaintiff had alleged in suit I a claim for permanent disability, future medical and hospital expenses and future pain and suffering. These elements of claimed damages were submitted to the jury by the court's instructions in suit I. See 22 Am.Jur.2d, Damages, sections 26, 27 and 106. Plaintiff realleged the same elements of damages as a basis for recovery in suit II.

In Goolsby we quoted this principle from Stucker v. County of Muscatine, 249 Iowa 485, 493, 87 N.W.2d 452, 457, as pertinent:

"'* * * Once a party has had an opportunity to be heard, he has had his day in court and cannot thereafter be heard to complain, especially if it can be said he had the opportunity to be heard on decisive merits.'"

We hold plaintiff had her day in court with full opportunity in suit I to effectively litigate the relevant issue of damages. Goolsby v. Derby, 189 N.W.2d at 916.

The insurance company seeks to defensively prevent relitigation of the damage issue already determined by urging her damages be restricted to $7250 less the value of her automobile (the uninsured motorist indorsement does not affect coverage for property damages) instead of the $8500 awarded in suit II. Expressed in another form, defendant invokes the doctrine of "issue preclusion" as to plaintiff's damages for defensive purposes.

We recognize, however, most prospective use of this doctrine in the uninsured motorist area would be offensive since generally the insured will use judgment against the uninsured as determinative of his rights to recover from the insurer. Offensive use of the doctrine was not reached in Goolsby v. Derby but see in this connection the annotation in 31 A.L.R.3d at 1044.

On the record before us, two of the three prerequisites which it is said the court traditionally looks for in applying collateral estoppel are present. In addition to those factors considered in Goolsby v. Derby, other factors considered important by other courts in determining availability of collateral estoppel notwithstanding a lack of mutuality or privity are also present. See 31 A.L.R.3d at 1052–1053.

There is no unfairness in holding plaintiff bound by the determination of her damages in suit I reached after the matter had been fully litigated unless the insurance company is estopped by its contract from asserting such defense. This question will be considered next.

II. As indicated, plaintiff had alleged in reply the insurance company was estopped from asserting the judgment in suit I was binding on the company and thus available to it to preclude relitigation of the issue of damages in suit II because of the company's previous insistence on compliance with the arbitration provisions of the uninsured motorist indorsement and because in another provision in the contract defendant declines to be bound by a judgment in a separate action brought by the insured

against the uninsured motorist without the company's consent.

We have also pointed out that the district court's ruling on defendant's motion to adjudicate points of law was based on this "consent to sue" provision of the contract.

■ The principles of equitable estoppel have been announced by the Iowa court many times. It is based upon the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied on it. Holsteen v. Thompson, 169 N.W.2d 554, 558 (Iowa 1969) and authorities cited. See also 31 C.J.S. Estoppel § 1; 28 Am.Jur.2d, Estoppel and Waiver, section 3.

In Holsteen v. Thompson, 169 N.W.2d at 558, the court quoted with approval this statement of law from Smith v. Coutant, 232 Iowa 887, 891, 6 N.W.2d 421, 424:

" * * * 'In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed, and who reasonably relied thereon. Such a doctrine is neither odious, nor in disfavor, in either law or equity.'"

State Automobile and Casualty Underwriters expressly represented to plaintiff the company intended to rely on its policy provisions in connection with her claim for bodily injuries. It notified plaintiff's counsel by letter dated October 23, 1969, the company demanded compliance with the arbitration provision in the uninsured motorist indorsement. (This letter was received in evidence as an exhibit in suit I.) The company by electing not to give its written consent to the prosecution of suit I thus gave plaintiff further notice it intended to rely on the policy, specifically the "consent to sue" provision, and would not be bound by any judgment entered pursuant to that action. It is clear these policy provisions

dealing with arbitration and consent to sue relied on by the company relative to plaintiff's claim for damages would exclude application of the doctrine of "issue preclusion" on the record before us by defendant.

After making such representations, the company now takes the position the judgment entered in suit I is binding on the parties to the policy and plaintiff is precluded from relitigating in suit II the issue of damages, a position diametrically opposed to its earlier stance.

We are convinced in light of the determined effect of the language of the policy provisions relied on, plaintiff was induced by defendant's representations to reasonably believe she could not be precluded by the doctrine of "issue preclusion" from fully litigating her claim for damages in an action against her insurer on the policy by a previous determination of that issue pursuant to an action against Crabtrees. As a result, plaintiff is prejudiced by defendant's asserted defense of "issue preclusion." At the same time, the insurance company seeks to obtain benefits by advancing this defense. See State v. Raymond, 254 Iowa 828, 836, 119 N.W.2d 135, 140, and authorities cited. See also S & M Finance Co. Fort Dodge v. Iowa State Tax Comm'n, 162 N.W.2d 505, 510–511 (Iowa 1968), where this court considered the problem of estoppel.

By reason of its representations and the prejudice resulting to plaintiff, defendant is now estopped from relying on what would otherwise be a good defense to prevent relitigation of the damage issue under the doctrine of "issue preclusion"; any other conclusion collides with ordinary notions of fair dealing and good faith.

III. In its third assignment of error which concerns the court's ruling on plaintiff's motion in limine, defendant urges in its only brief point the judgment entered in suit I was admissible as conclusive of the rights between plaintiff and defendant in suit II.

In its argument in support of this assignment defendant does not complain of plaintiff's refusal to comply with defendant's request for submission to arbitration or to the fact suit I was commenced without the company's written consent. Instead, defendant now urges application of that judgment to prevent relitigation of the damage issue.

In division II, supra, we have determined defendant is estopped by the policy terms which it had relied on from asserting this theory to prevent relitigation of the damage issue in suit II. Much of what is said in that division applies to this assignment.

Defendant seeks to avoid the result reached in division II, supra, by telling us at one point in its argument it would be more appropriate and well reasoned to strike down the permission to sue clause.

The company maintains in argument if we declare the consent to sue provision invalid, the result would not be as harsh as might appear at first glance since other jurisdictions have held the insurer has the right to intervene in the suit against the uninsured motorist and thus insure full development of the issues and guard against fraud, collusion or misrepresentation.

Defendant relies on Indiana Insurance Company v. Noble (Ind.App.), 265 N.E.2d 419 and Heisner v. Jones, 184 Neb. 602, 169 N.W.2d 606, which held such arbitration and consent to sue provisions invalid and that the insurance company had a right to intervene in a case brought by the insured against the uninsured motorist. The annotation in 24 A.L.R.3d 1325 deals with validity and enforceability of arbitration provisions in uninsured motorist contracts. The Heisner opinion deals with the question of intervention at 169 N.W.2d 611–612. The Indiana Insurance Company opinion considers the problem at 265 N.E.2d 433–434 and cites many authorities in support thereof.

The consent to sue and arbitration provisions seemingly go hand in hand and stand or fall together. Heisner v. Jones,

169 N.W.2d at 611, expresses this view of the law: " * * * [T]he consent to be bound provision and the arbitration clause provision are mutually complementary and mutually reciprocal, and inducive to each other * * *."

In view of our holding in division II, supra, that defendant is estopped from invoking the doctrine of "issue preclusion," it is not necessary that we reach the question of the validity of these provisions. That issue will undoubtedly come before the court when the insured seeks to rely on the doctrine in an offensive manner against the insurance carrier and the carrier relies on the policy terms as a basis for contending both the liability and damage issues should be relitigated in the suit under the policy, a factual situation not presented by this record.

The case is therefore

Affirmed.

All Justices concur, except HARRIS, J., who takes no part.