Charles BERTRAN, Appellee,

v.

GLENS FALLS INSURANCE COMPANY, Appellant.

No. 2–57018.

Supreme Court of Iowa.

Aug. 29, 1975.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellant.

Wunschel Law Firm, P. C., Carroll, for appellee.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REES, Justice.

This is an appeal by defendant Glens Falls Insurance Company, the insurer of one Robert Richey, an electrical contractor who operated under the trade name and style of Brower Electric, from a judgment and decree finding defendant insurer liable under an insurance contract issued to Richey. Trial court held there was coverage under the policy contract and held defendant liable thereunder. We reverse and remand.

On July 9, 1969 plaintiff Charles Bertran was operating a conveyor to elevate fertilizer at the plant maintained by his employer, Federal Chemical Company of Webster City, when he sustained a severe electrical shock. Bertran brought suit against Chantland Company, Inc., the manufacturer of the conveyor, and Robert Richey, who had been employed by plaintiff's employer to install the conveyor. Trial court in that case found Chantland not liable, but rendered judgment against Richey and in favor of Bertran in the amount of $15,000. An execution issued on the judgment was returned unsatisfied and Bertran then initiated the within action against Glens Falls Insurance Company, Richey's insurer. Richey filed a separate action against Glens Falls seeking indemnity on Bertran's unsatisfied judgment. The two actions were not consolidated. The fighting issue here is a dispute over the provisions of the insurance policy excluding coverage for losses sustained from "completed operations". The parties agree generally on the operative facts except as they bear on the construction to be given the term "completed operations".

The instant action was tried to the court, the company defending on the grounds plaintiff's injury arose from a "completed operation", and therefore was not within the provisions and contemplation of the policy issued Richey. Trial court found otherwise and held defendant company liable for the amount of its policy, viz, $10,000.

While this appeal is taken from the judgment entered for Bertran in his action against the defendant insurance company, both parties to this appeal characterized the dispute as one involving the insured (Richey) and the insurer on the insurance contract. In any event, Bertran will obviously be directly affected by our resolution of the policy dispute.

The sole issue before us in this appeal is whether trial court erred in holding the "completed operations" exclusion of defendant's policy issued Richey did not preclude Bertran's recovery or excuse the defendant company from liability as Richey's indemnitor.

I. The policy issued Richey by defendant company which was in effect when Bertran sustained injury provided general liability coverage for bodily injury and property damage occurring on the insured's premises and in connection with his "operations in progress". The policy contained several exclusions and expressly denied coverage for "bodily injury or property damage included within the completed operations hazard

* * *." "Completed operations hazard" was defined in the policy to include:

"bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed.

"(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction repair, or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

■ II. There is no suggestion in the evidence, nor is any question raised here, that the insured (Richey) misunderstood or considered ambiguous the policy definition of "completed operations", or was under an impression the coverage he purchased extended to completed operations, nor any claim the policy itself did not fairly represent his agreement with the company. Cf. *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.,* 227 N.W.2d 169 (Iowa 1975). The plaintiff (Bertran) does not in fact dispute in this appeal defendant company's contention completed operations coverage would have required a separate endorsement to the policy purchased by Richey, and appears to concede the coverage actually agreed upon encompassed only incomplete operations. In the absence of any claim the exclusionary language of the policy is ambiguous or requires interpretation, the familiar rule requiring construction of ambiguous insurance contracts to be favorable to the insured is inapplicable here. See *Dublinske v. Pacific Fidelity Life Ins. Co.,* 230 N.W.2d 924 (Iowa, filed June 25, 1975); *Brush v. Washington Nat. Ins. Co.,* 230 Iowa 872, 299 N.W. 403. The applicable rule is that which generally applies where no ambiguity exists in a written contract and requires simply that the intent of the parties be determined from what the contract says. Rule 344(f)(14), Rules of Civil Procedure; *State Auto & Cas. Underwriters v. Hartford Acc. & Ind. Co.,* 166 N.W.2d 761, 764 (Iowa 1969).

The insurance contract in question does not provide for coverage to the insured for property damage or personal injury arising from completed operations. Neither the insurer nor plaintiff Bertran claims the contract fails to accurately reflect the coverage agreed upon. In light of these principles the question before the court in this appeal then is whether the insured's "operation" in wiring the conveyor installed at the location where Bertran worked was "completed" at the time he sustained injury. This question is essentially a factual one, to be resolved against the background of the policy provision defining "completed operations", with deference accorded fact findings of the trial court.

■ III. The burden of proof in this case rested on the defendant company to prove the applicability of the policy exclusion which it raised as an affirmative defense to Bertran's claim. See Rules 344(f)(5) and 344(f)(6), R.C.P.; *Lamar v. Iowa State Traveling Men's Ass'n,* 216 Iowa 371, 249 N.W. 149; *Rich v. Dyna Technolo-*

*gy, Inc.,* 204 N.W.2d 867, 871 (Iowa 1973). See generally, 21 Appleman, Insurance Law and Practice, § 12238 at page 182.

In claiming the insured's wiring operation was completed at the time Bertran sustained his injury, defendant Glens Falls relies on Bertran's testimony and that of its insured Richey. Bertran testified the conveyor was functioning normally on the day he was injured and had, to his knowledge, not malfunctioned previously when put to its normal and intended use. Richey testified on direct examination that he had initially wired the conveyor in September 1967 and had returned to the site in September 1968 to replace a four-wire, four-prong outlet with a three-wire, three-prong outlet. This was apparently in answer to a service call to the plant operated by Bertran's employer. The installation of the three-wire, three-prong outlet was intended to be temporary due to the fact Richey did not have available the proper outlet to afford a ground. Richey testified the conveyor was "in good shape" when he left, after rewiring and replacing the outlet in September 1968 and the conveyor was then available for its normal and intended use. On cross examination Richey testified he had ordered a four-prong plug for the conveyor after installing the three-prong plug, and that the four-prong plug was in his possession on July 9, 1969, the date Bertran was injured. The manager of the plant where Bertran was injured testified Richey told him after replacing the four-prong plug with the three-prong plug in September 1968 that he was going to come back and install the proper four-prong plug. Richey testified he knew the three-prong plug should have been replaced but that he had forgotten about making the change at the time Bertran was injured.

IV. In support of the holding below, plaintiff Bertran relies entirely on the doctrine of issue preclusion, claiming trial court's finding in the prior case of *Bertran v. Chantland and Richey* that the insured's electrical wiring operation was incomplete at the time Bertran sustained injury was entitled to collateral estoppel effect in the instant action. In the case in which the judgment against Richey was rendered, the trial court found the change in wiring made by the insured in September 1968 was temporary and that Richey intended to order and later install a four-prong plug to complete the project. That not having been done on July 9, 1969, the date of plaintiff's injury, the court concluded the insured's operation was not completed when Bertran sustained his injury.

Trial court seemingly accorded the prior resolution of the "completed operation" question collateral estoppel effect in the instant case, referring in support of its finding the company liable on the insurance contract only cases dealing with the related subjects of res judicata, collateral estoppel and issue preclusion. Glens Falls here argues trial court improperly applied the doctrine of res judicata in the instant case and contends alternatively that the issue is not before this court on appeal because the insured failed to affirmatively plead res judicata below.

V. The record reveals the issue of res judicata was raised, if at all, by a motion in limine. We have established the rule that a party who desires to set up a prior adjudication as a bar to a claim made by an opposing party must properly plead such adjudication before evidence is admissible in regard to it. *Boone Biblical College v. Forrest,* 223 Iowa 1260, 1264, 275 N.W. 132, 135. We have also declared that a plea of former adjudication is an affirmative defense, with the burden on defendant to plead and prove it. *Bloom v. Steeve,* 165 N.W.2d 825, 827 (Iowa 1969); *In re Estate of Kaldenberg,* 256 Iowa 388, 127 N.W.2d 649, 651. In *Bickford v. American Interinsurance Exchange,* 224 N.W.2d 450, 454 (Iowa 1974) we said:

"[R]esearch discloses a great number of state jurisdictions where * * * appellate courts of those jurisdictions have held that unless the fact and nature of the prior adjudication affirmatively ap-

pear on the face of the complaint or petition res judicata is an affirmative defense to be asserted by answer and cannot be raised by motion to dismiss. In our opinion such cases state the proper rule and the one which should be adopted in this jurisdiction."

It is worth noting the above cases dealt with the defensive use of the doctrine of res judicata, in which a stranger to the earlier judgment, normally the defendant in the second action, relies on such earlier judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense. Plaintiff here sought to use the doctrine of res judicata offensively, as conclusively establishing in his favor an essential element of his cause of action or claim.

The record before us indicates plaintiff did not raise the matter of former adjudication in the pleadings. Rather, the first mention of any such matter appeared in the plaintiff's motion in limine. We are not prepared to say a litigant may invoke the offensive use of res judicata by raising the matter by motion. We hold, therefore, the issue of res judicata/issue preclusion and the issue of "collateral estoppel" were not properly before the trial court in the instant case, and will not support the trial court's conclusions and decision.

■ The decree of the trial court in the instant case provided in pertinent part:

"The defendant herein claims that there was no coverage because of an exclusion. The Court finds otherwise; that there was coverage at the time of the accident. * * * "

This action being at law, findings of the trial court are binding on us if supported by substantial evidence. Generally, we view the evidence in its light most favorable to sustain rather than defeat such a finding. *Long v. Glidden Mutual Ins. Ass'n,* 215 N.W.2d 271, 272 (Iowa 1974).

■ Holding, as we do, that the trial court erroneously allowed a prior adjudica-

tion to be raised by motion, we do not find other substantial evidence on the record to support the decision. The plaintiff Bertran introduced no evidence to support his claim other than evidence of the prior adjudication and the insurance policy itself. On appeal he relies entirely on the doctrine of issue preclusion. We believe, therefore, the case should be reversed and remanded for a new trial.

VI. Recognizing the likelihood that the prior adjudication will be raised in a proper manner by the plaintiff on retrial, we believe it advisable to note that the trial court was in error in giving res judicata effect to the earlier judgment on the issue of whether Richey's repair was a completed operation within the meaning of the insurance contract. A short review of the first case will be helpful to a full understanding of the matter.

The first case in which judgment was entered for Bertran was a suit by him for damages resulting from the electric shock. Richey was found to have been negligent in the repair of the conveyor in installing a three-prong plug without an adequate ground. The trial court's conclusion of law pertinent to our case is contained in the following sentence:

"Such negligence was a proximate cause of the injuries sustained by the Plaintiff *and the fact that it was an incompleted project by the Defendant Richey provides no legal excuse.*" (emphasis added).

In the instant case, trial court's ruling giving issue preclusive effect to the prior adjudication actually spelled defeat for the defendant company since its defense was based upon a policy provision excluding "completed operations" from policy coverage. A review of the applicable Iowa cases and the application of sound policy leads us to no other conclusion but that it was error to give preclusive effect to the prior judgment on the issue of whether Richey's repair was a "completed operation" within the meaning of the policy.

We must begin any discussion of the modern Iowa doctrine of res judicata/issue preclusion with a review of *Goolsby v. Derby,* 189 N.W.2d 909, 913–917 (Iowa 1971). In *Goolsby* we discussed the doctrine of res judicata as applied both to issue preclusion and claim preclusion, and identified the traditional three prerequisites to its application:

"(1) Identity of issues raised in the successive proceedings, (2) determination of these issues by a valid final judgment to which such determination is necessary, and (3) identity of the parties or privity * * *."

We modified the requirement of privity by eliminating the necessity of mutuality of estoppel where the doctrine is invoked defensively against a party who was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution. See *Larsen v. McDonald,* 212 N.W.2d 505, 507 (Iowa 1973).

The foundation theory on which the doctrine of issue preclusion rests is that the parties ought not to be permitted to litigate the same issue more than once. *Goolsby, supra* at 915. *Phillips v. Cooper,* 253 Iowa 359, 360, 112 N.W.2d 317, 318. On the other hand, the doctrine of collateral estoppel is predicated on the philosophy a party should have a full and fair day in court to be heard on the issues involved in the cause of action. *Goolsby, supra.*

In *Schneberger v. United States Fidelity & Guar. Co.,* 213 N.W.2d 913, 917 (Iowa 1973), we elaborated on the prerequisites to issue preclusion and declared:

"(1) The issue concluded must be identical.

"(2) The issue must have been raised and litigated in the prior action.

"(3) The issue must have been material and relevant to the disposition of the prior action, and

"(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

■ With respect to the third and fourth prerequisites to issue preclusion, we have noted that generally a judgment is not binding or conclusive as to facts or questions of law, although put in issue and actually tried and expressly determined in the former action, where such matters were immaterial or unessential to the determination of the real and decisive issue. *Hutchinson v. Maiwurm,* 162 N.W.2d 408, 411 (Iowa 1968). The judgment in the former case must rest upon the fact found or the fact is not res judicata and is open to litigation in a subsequent suit. *Bickford v. American Interinsurance Exchange, supra.*

■ In the case before us plaintiff was apparently successful at trial in asserting the offensive use of res judicata/issue preclusion to bar a subsequent determination of whether Richey's repair constituted a "completed operation". The fact plaintiff attempts to use the doctrine offensively against one not a party to the earlier judgment is an important factor in determining the availability of the doctrine of issue preclusion since courts are generally reluctant to make exception to the mutuality rule in such a circumstance. *Goolsby, supra* at 916. We have in no case accepted such an offensive use where there is no mutuality, and to allow the same in this case would be most inappropriate.

VII. In the light of the foregoing, we proceed to analyze the problem further.

*1. The Issue Concluded must be Identical.*

■ In the first case in which judgment was entered in Bertran's favor and against Richey, the court found as a matter of fact that Richey's repair operation was an "incompleted project". The issue here is whether Richey's repair was "a completed operation" within the meaning of the insurance contract. In the first case the court

was not construing or interpreting the policy in question, and the policy was not before the court at all. Since the issue of the exclusion in the insurance policy was not before the court, it cannot be argued trial court's language in the first case had any relevance to the policy. Certainly the use of the words "incompleted project" in the generally accepted or vernacular sense cannot be thought to be a substitute for careful construction or interpretation of the language of the insurance policy.

*2. The Issue must have been Raised and Litigated in the Prior Action.*

The issue of the policy exclusion was in no way involved in the prior adjudication.

*3. The Issue must have been Material and Relevant to the Disposition of the Prior Action.*

There is no evidence that the "incompleteness" of the project was either relevant or material to a determination of Richey's liability—the issue adjudicated in the former action. In fact, the conclusions of law reached by the trial court appear to indicate that the incompleteness was totally irrelevant to a finding of negligence.

*4. The Determination made of the Issue in the Prior Action must have been Necessary and Essential to the Resulting Judgment.*

It follows *a fortiori* from the discussion *supra* that this prerequisite is not satisfied.

▆▆▆ It is true that perfect symmetry of parties is no longer a prerequisite to a "defensive" application of collateral estoppel or issue preclusion. *Mizer v. State Automobile & Cas. Underwriters,* 195 N.W.2d 367, 370 (Iowa 1972) [citing *Goolsby*]. Nonetheless, *Goolsby* should not be read as modifying the mutuality requirement in the offensive use of issue preclusion. Modification in that circumstance should come, if at all, only in an appropriate case. Here it is apparent that the interest of Richey, the defendant in the former adjudication, is not in any sense concurrent with the interest of the defendant insurance company in the matter before us here. It would be greatly to Richey's advantage to have his repair operation come within the general provisions of the policy. The interest of the defendant insurance company is to show Richey's operations fall within the contract exclusion.

In light of the. foregoing analysis, it would be improper to permit the application of the doctrine of issue preclusion in this case.

VIII. By sustaining plaintiff's motion in limine the trial court gave preclusive effect to the former judgment on the issue as to whether Bertran's injury was within the provisions of the Richey policy. This amounted to a plea of former adjudication raised by motion, contrary to our repeated holdings such a plea may not be so raised. The only other proof offered by plaintiff was the insurance contract itself. Therefore, absent the preclusive effect of the former judgment, there does not appear to be substantial evidence in the record to support the judgment of the trial court here. In view of the fact the policy was not before the court in the first case, and the policy exclusion was not in issue, it was improper for the trial court in the matter before us now to give preclusive effect on the issue of coverage to the former judgment.

This case is therefore reversed and remanded.

Reversed and remanded.

MOORE, C. J., and UHLENHOPP, J., concur.

REYNOLDSON and HARRIS, JJ., concur in result.