In the Matter of the ESTATE OF Chas. BRUENE, Deceased.

Wesley DREESZEN; Emmett Dreeszen; Elvie Dreeszen; Kenneth Bruene; Merlin Bruene; Ina Dreeszen Volkert; Velma Dreeszen Goettsch; Ruth Bruene Goodburn and Gladys Bruene Strackbein, Appellants,

v.

Arnold PUTENSEN; Branco and Boerner; Branco, Boerner and Renegar; Boerner Law Firm; and Thomas L. McCullough of the McCullough Law Firm, P.C., Appellees.

No. 2–68014.

Court of Appeals of Iowa.

Feb. 21, 1984.

Morris C. Hurd, Ida Grove, for appellants.

Laurel L. Boerner, Ida Grove, Iowa, and Thomas L. McCullough, Sac City, Iowa, for appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ., but considered by OXBERGER, C.J., and DONIELSON, SCHLEGEL, HAYDEN, and SACKETT, JJ.

HAYDEN, Judge.

Nine devisees under decedent's will appeal, and the executor of the estate and the attorneys for the executor cross-appeal, from the probate court's ruling on objections to the executor's Final Report and Amended Final Report.

Decedent, Chas. Bruene, died in 1974. This appeal represents the most recent in a series of legal proceedings concerning the administration and distribution of his estate. The relevant facts are set forth below as needed to discuss the issues raised.

On appeal, the nine devisees assert: (1) that the executor's sale of decedent's farmland to the executor's nephew and to decedent's niece should have been voided; (2) that the executor's nephew did not pay all the rent he owed for the time he leased decedent's farmland, and he should have been required to do so; (3) that the real estate broker should have been required to return the commission the executor paid him on the sale of the farmland; (4) that the executor and his attorneys should not have been allowed any ordinary or extraordinary fees and expenses; and (5) that the probate court exceeded its jurisdiction in staying distribution of the estate. On cross-appeal, the executor and his attorneys assert that they should have been allowed extraordinary fees and expenses for defending two separate actions brought against the executor by the nine devisees.

■ Our review of appeals of this nature is **de novo**. Although we are not bound by the trial court's findings of fact, we do give weight to them, especially where the credibility of witnesses is involved. Iowa Code § 633.33; *Matter of Estate of Simon*, 288 N.W.2d 549, 551 (Iowa 1980).

I. *Sale of Farm Land.* There have been eight years of continuous litigation that has been pursued by the appellants,

involving the sale of the estate real estate. We will not go into the course of this litigation in detail, but will only mention the decisions which we determine to be res judicata as to the issues the appellants raised in their objections to the Final Report.

The original action filed by the nine objectors on October 7, 1974, had the appellants as parties plaintiff and Arnold Putensen as executor, and the purchasers, Douglas Putensen and Arlene Ritz Hensley as the parties defendant. The issue was the sale of the farm real estate to Arlene Ritz Hensley and Douglas Putensen for what the appellants claim, inter alia, was too low a price.

The appellants requested that the sale be enjoined, that the executor be removed, and other equitable relief and costs. As grounds for their suit, the appellants alleged that the executor had violated his duty to sell for the best price to responsible and bona fide buyers; that he had abused his discretion; that there was a failure of the executor's duty to perform his responsibilities in selling for the best price; and that he did not act as a prudent person. Both parties moved for summary judgment and the executor's and purchasers' motion was sustained by the court upon a finding and conclusion by the court that, based upon the evidence presented, there was no genuine issue as to any material fact; and the executor was entitled to judgment and dismissal as a matter of law. *The appellants failed to appeal from this decision.*

The appellants attempted to amend their petition to claim and surcharge the executor for damages and the purchasers filed special appearances which were sustained by the trial court on April 14, 1975 in Probate Number 5773.

We note as to the special appearances by the purchasers, the ruling shows that the appellants agreed to the sustaining of the special appearances. Apparently this was done so that the sales could be concluded, and possession delivered to the purchasers for the 1975 crop year.

The appellants then pursued the avenue of attempting to sue the executor for damages after the trial court stated in its ruling of January 13, 1975:

At most it might be said that a claim is being urged based upon breach of duty on the part of the executor under section 633.160, Code of Iowa, 1973. If so, the plaintiffs may attempt to hold the executor liable and chargeable, but upon this, the Court intimates no opinion or conclusion. The plaintiffs have not prayed for any such relief here.

The identical nine residuary beneficiaries filed their petition at law. The petition named the executor as an individual and alleged that the executor disregarded his statutory and common law duty to act in the best interests of the estate; that the sales of land were not legally made nor fairly conducted; that the sales were contrary to the duty of the executor to act in the best interests of the estate; and that the executor neglected and failed to perform his duty in several respects; and the appellants in that action sought $5,333.33 damages each. The executor filed motions contending that the prior action in the estate was res judicata on the law action against the executor; and the trial court agreed; but on appeal, the court of appeals held:

We deem it obvious that this action for damages does not present the same claim or cause of action that was involved in the probate proceedings.

 * * * * * *

The Trial Court in the probate proceeding carefully avoided passing upon the right, if any, of the plaintiffs herein to seek money damages from the executor. *See* Iowa Court of Appeals Decision, May 20, 1977.

The remaining issue of monetary damages was ultimately presented to the jury who found for the executor and the subsequent appeal to the court of appeals by the appellants was unsuccessful and the jury verdict was affirmed. *See* Court of Appeals Decision, September 23, 1980. 301 N.W.2d 468.

The court of appeals, in its decision, dealt with all of the aspects of the case that were again alleged by the appellants in their objections to the final report. They noted in their decision that the appellants were attempting to prove an inadequate selling price, and that the land was worth $1,000 per acre; that the executor did not use proper selling methods to obtain the best price; that there was a lack of communication between the executor and the beneficiaries; that the executor was guilty of self-dealing; that the executor and his witnesses perjured themselves; that the executor's affidavits of December 4, 1974, and September 1, 1977, were inconsistent.

█ The issues raised here by the appellants have been pursued and raised in the prior estate action and the law action. The four prerequisites of res judicata enumerated by the Court in the recent case of *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123–25 (Iowa 1981), have been established, namely:

(1) The issue concluded must be identical;

(2) The issue must have been raised and litigated in the prior action;

(3) The issue must have been material and relevant to the disposition of the prior action;

(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

Relevant authorities also are *Bertron v. Glen Falls Insurance Company*, 232 N.W.2d 527 (Iowa 1975), on the issue of issue preclusion; *Goolsby v. Derby*, 189 N.W.2d 909, 913–17 (Iowa 1971), as to the prerequisites of res judicata; and *Schneberger v. United States Fidelity and Guaranty Company*, 213 N.W.2d 913, 917 (Iowa 1973), as to the principles of issue preclusion.

All orders and decrees of the court sitting in probate are final decrees as to the parties having notice and those who appeared without notice. Section 633.36, Code of Iowa (1975), and *In re Harstack*

*Estate*, 250 Iowa 510, 94 N.W.2d 744 (1959).

Even if we were to determine that res judicata and issue preclusion would not apply and bar the appellants from raising the land sale issue in the hearing on the Final Report, we find in this **de novo** review that the evidence establishes the propriety of the sale.

The evidence presented at the hearing on the Final Report consisted of the evidence previously presented in the jury trial of Law Number 11293, as well as the testimony of witnesses at the hearing on the Final Report. The trial court found, after reviewing this evidence, that the evidence preponderated in favor of the executor.

The evidence showed:

1. The executor hired a broker.

2. The executor and his broker actively sought to sell the land at the highest price obtainable. Besides the executor's and Pat Forristal's testimony and itemization of the executor's services in connection with the real estate sale filed in the estate, the deposition of Jim McGuire is part of the evidence and shows efforts by the executor and broker to obtain offers for the property.

3. The land was sold at the highest price of any cash sale in that particular township to date.

4. The sales price was $125 per acre over any other offer.

5. Expert witnesses felt that the sale was for a good price.

█ The appellants were afforded an opportunity at the hearing on the Final Report to again present their case. We hold the appellants have had their day in court on this issue and affirm the trial court in so finding in his Order on the Final Report. Parenthetically, we observe that litigation must ultimately come to an end. The sales of the farmland by the executor and objected to by the nine appellants are approved.

II. *Accounting for Rents.* The executor has shown an itemization of rental income and expense items in his and the tenant's testimony. The exhibits and the

itemization are contained in the Preliminary Report of Executor, filed June 2, 1977, and Exhibits A, B, and C attached thereto. The itemization of receipts shows the estate received $21,786.49 for the 1974 crops.

Douglas Putensen, the tenant, testified "he was sure the estate had received all rentals," after he had testified at length about the rental agreements and accounting for rents.

The executor further testified in detail about the rental agreement, and Exhibits 13–20 are in evidence to support his testimony. He concluded that the estate had received all of its money from the tenant.

The record before us shows that the executor supervised the lease before and during the harvest, and also the division of crops.

The trial court, in its ruling on the Final Report after hearing thereon, found:

The executor and his nephew, Douglas Putensen, who was the tenant on the farm during the period following the death of the decedent, testified that they had properly accounted for all rents owing to the estate and all other moneys due or owing from the rental of the farm.... In response to the evidence presented by the estate, the protestors offered no meaningful testimony of persons with knowledge of the facts or exhibits which significantly raised a question as to the accounting of the executor for rentals due.

■ The general rule is that, after objections are filed, the personal representative generally has the burden of proof to sustain all matters raised in the Final Report. *In re Estate of Smith*, 223 Iowa 172, 271 N.W. 888 (1937). The trial court determined the executor had met his burden of proof on this issue, and we agree, even though appellants assert that the executor and his tenants could not remember *all* of the details of a rental agreement or crop acreages or yields that occurred some seven years before the hearing on the final agreement. We affirm the trial court on this issue.

III. *Real Estate Broker's Commission.* The executor hired Mr. McGuire as real estate broker by an oral contract at a five percent (5%) commission to assist him in selling the estate property. The appellants contend that the executor should not have paid Mr. McGuire's commission for the following reasons: (1) The executor did not obtain prior court approval before hiring Mr. McGuire, and (2) Mr. McGuire did not sell the property, but rather the executor sold the property.

■ The testator, Chas. Bruene, gave the executor authority to sell the farms. We recite the pertinent provision of his will as follows:

I direct, authorize, and empower my Executor hereinafter named ... to sell all my property, both real and personal, at public or private sale as he may think best, as soon as convenient after death, and in such manner and at such time as may seem to him to be for the best interests of my estate, and I give him full authority to execute deeds and release all mortgages necessary in closing my estate.

Iowa Code section 633.383 (1973), provides as follows:

*When power given in will.* When power to sell, ... property of the estate has been given to any personal representative under the terms of any will, the statutory requirements with reference to procedure for such purposes shall not apply.

Because of the broad authority granted in the will, the executor was empowered with authority to sell the real property without the requirement of obtaining prior court approval, notwithstanding statutory or local court rules to the contrary.

The case of *Lund and Seamands v. Riggs*, 174 Iowa 79, 156 N.W. 161 (1916), involved similar facts as those involved in the instant case. The executor in *Lund* had authority in the will to sell the estate property at his discretion; and in carrying out this task, he hired a broker. A dispute arose over the real estate commission, and

the court ruled that it be paid, saying: "It has also been held that where an executor has entered into a contract, without authority, and the estate has received the benefit of the same, the creditor may recover the amount from the estate." *Id.* at 81–82, 156 N.W. at 162.

Appellant objectors assert that the broker did not actually sell the property and, thus, was not entitled to a commission. However, the record establishes:

1. That the broker devoted time and effort to selling the property. The transcript reflects the efforts made by the real estate agent to advertise and sell the real estate. In addition, Pat Forristal, an employee of McGuire Auction Company, testified at the hearing on the Final Report as to the efforts undertaken to sell the estate land.

2. That both the broker and the executor considered his contract one which required compensation for his efforts.

3. That the broker actively participated in closing the ultimate sale by seeking further bids.

4. That the broker's efforts helped establish the market price.

5. That the broker aided the executor throughout the sale process. Testimony of the executor and the trial testimony of the broker show that their contract was one calling for compensation to the broker whether he or the executor sold the land. The trial transcript shows that the executor referred all buyers who inquired to McGuire Auction Company, that the contract forms were obtained from McGuire Auction Company, that Douglas Putensen, one of the ultimate purchasers, had previously talked to the broker, Jim McGuire; and the downpayment check was made out to McGuire Auction Company who helped complete the sale.

 We agree with the trial court that a binding contract of employment was established between the executor and the real estate broker for the sale of the farmland for the estate of Chas. Bruene. The fact that such contract was not in writing does not void it. *See* 12 Am.Jur.2d, Brokers, section 38: "In the absence of a statutory requirement specifically applicable thereto, the contract of employment between a broker and his principal may be either oral or written...." The Iowa Real Estate Commission has promulgated a rule requiring all real estate listing agreements to be in writing, which the supreme court has upheld. *See* 700 Iowa Admin.Code § 1.23; *Milholin v. Vorhies,* 320 N.W.2d 552, 553–54 (Iowa 1982). However, this rule was not put into effect until July 1, 1975 and, therefore, has no applicability to the present case where the brokerage agreement was entered into and the property was sold prior to the effective date of the rule. Accordingly, we affirm the trial court in approving the payment of the sales commission to the broker.

*IV. Executor and Attorney for Executor Fees.* The appellants are before this court for the fifth time during the pendency of the probate proceedings of this estate which was opened in May 1974. Except for a declaratory judgment action by the executor, all other litigation was instituted by these appellants. For the most part the claims and issues were repeatedly pursued and litigated by these appellants to no avail. On appeal here, they continue to do so and again reallege the attorneys "did wrong—their efforts were detrimental to the estate;" the executor and his attorney "mishandled the estate" and "have a conflict of interest" in the sale of land to the executor's nephew and to decedent's niece for inadequate sums and in an improper manner; the executor and attorneys "are all guilty of extreme bad faith" and they "wrongfully" took extraordinary fees. Upon review of the voluminous record, briefs and arguments of counsel, transcript, and exhibits, we conclude appellants' allegations have no merit.

The appellants demand that the executor and his attorneys not be allowed any fees for their services in this estate. We find such contention unwarranted and untenable. The executor and his attorney claim the extraordinary fees awarded them by

the trial court are not reasonable and are inadequate for the time and services necessarily expended and devoted, for the most part, in the defense of litigation commenced by the appellants. The appellees have itemized in detail their services to the estate in the applications that have been filed. These applications show the following:

*Attorney's Fees and Expenses*

1. The application of 9–8–75, the attorney for the estate, Richard Branco, reported 51½ hours involved in contesting the sale proceedings in the estate and Supreme Court work, which is based on a rate of $40/hr.

2. The application of 8–17–81, showing extraordinary services for litigation in the estate, based upon an hourly rate of $60/hr. and itemizing 55.85 hours of services.

3. The application of 10–8–81, itemizing and showing that the firm of Boerner and Renegar had spent 29.74 hours involved in the litigation on the Final Report.

4. The application of 12–21–81, showing services rendered by the attorney for the estate in litigation of 17.25 hours.

Total amount of time attorney spent for extraordinary services and litigation —154.34 hours.

*Executor's Fees and Expenses*

1. The application of 9–8–75, the executor spent 68.75 hours regarding the litigation, 58 hours regarding tenant house rental and management, 53 hours concerning the sale of farmland, and 92 hours concerning farm rental management for which he requested compensation at the rate of $11.59/hr. and expenses at $284.60 for telephone expense and $350.00 for mileage.

2. The application of 10–8–81, showing itemization that the executor had spent 7 hours of time and $16.80 for out-of-pocket expenses with regard to the litigation concerning the Final Report.

Total amount of time executor spent for extraordinary services and litigation —278.75 hours.

The trial court, in its ruling of November 30, 1981, disallowed to the executor and his attorney fees and expenses connected with a declaratory judgment action that was filed in the estate and also the expenses of litigation in Law Number 11293 in which the executor was sued as an individual for malfeasance in the sale of real estate. Appellees have cross-appealed on these two issues, which we address later in this opinion.

The trial court awarded to the executor and his attorney the statutory fee of $3,975.62 for ordinary services and required that all previous fees for extraordinary services and expenses be returned to the estate, which fees had been ordered by ex parte orders from the probate court from time to time.

The trial court found that the executor should receive as just and reasonable compensation for extraordinary services the sum of $2,500.00 and an expense allowance of $750.00; and at arriving at said amount reduced the amount for services in connection with the sale of the farm from what the extraordinary services would have been had the executor not employed and been assisted by the real estate broker in performing that necessary and extraordinary service pursuant to Iowa Code section 633.-87 (1981).

The designated attorneys for the estate were awarded by the trial court just and reasonable extraordinary fees in the amount of $7,500.00 and this amount was reduced by the sum of $3,722.00 which was the amount of a check dated March 2, 1976, paid to "Dick Branco" by McGuire Auction Company for what the court found to be for services rendered in the estate in connection with the handling of the sale of the real estate, and further awarded the attorneys for the estate $250.00 for expenses. The attorneys for the executor have no argument with the reduction of the amount of $3,722.00 for extraordinary services.

■ In endeavoring to ascertain a reasonable legal fee, relevant factors include the time necessarily spent by the attorney, the nature and extent of the service, the amount involved, the difficulty of handling and the importance of the issues, responsibility assumed, results obtained, and the experience of the attorney. *Matter of Estate of Simon*, 288 N.W.2d 549, 552 (Iowa 1980) (citations omitted). Also in that same opinion the Iowa Supreme Court noted its holding in *Glynn v. Cascade State Bank*, 227 Iowa 932, 289 N.W. 722 (1940), wherein it stated the rule: "To a considerable extent the compensation of an attorney rests in the discretion of the court. Yet, as stated, this must be a reasonable degree of discretion."

■ The burden rests upon the person requesting compensation as fiduciary attorney to show the services rendered and the value thereof. *Estate of Myers*, 238 Iowa 1103, 1107, 29 N.W.2d 246 (1947). Upon an all-points review and consideration of this appeal, we conclude the probate court exercised a reasonable degree of discretion in his award of reasonable and extraordinary fees to the designated attorneys for the estate and the executor. We do not disturb the award of fees which he determined should be allowed.

V. *Did the Court Sitting in Probate, Exceed Its Jurisdiction, or Act Illegally When It Made and Entered the Order of February 26, 1982, Finding and Ruling That Executor Not Make the Final Distribution as He was Ordered to do by the Order of December 29, 1981? Should That Order of February 25, 1982, be Annulled?* The probate court entered its rulings on the amended final report and accounting on December 29, 1981, approved the amended Final Report which was filed on December 10, 1981, and provided that distribution should be made on December 30, 1981, and that the executor should be discharged from further duties and responsibilities in the estate; and the estate should be closed. The appellants filed their notice of appeal on December 30, 1981. The executor on December 31, 1981, filed a combined motion asking that the distribution be delayed and the previous order of the court modified due to the appeal of the appellants. This combined motion also prayed that any execution on the orders of November 30, 1981, and December 29, 1981, entered by the court closing the estate be stayed by the court until the appeal was completed.

The appellants filed a resistance to combined motions on January 5, 1982; and the court on February 26, 1982, granted the executor's request that the distribution be stayed until further proceedings had been completed. The court found in its ruling that:

When the Court ruled on December 29, 1981, that distribution should be made in accordance with the executor's amended final report and accounting, it did so without regard to the consequences of one or more appeals. With appeals filed from the ruling, and with appeal proceedings pending, the executor ought not to make distribution and be discharged from duties and responsibilities, since the estate cannot be closed until appeal proceedings and any post-appeal proceedings are concluded.

The court also found that the rulings that had been entered by the court were final for purposes of the appeal, but were not final orders for probate purposes. The court further overruled the objectors' application for an order authorizing execution to issue. The objectors were asking that the execution issue be based upon the amended final report and accounting and not upon the amended accounting subsequently filed which stated the correct distribution according to Iowa statutes.

The appellants filed a Petition for Writ of Certiorari on March 11, 1982, stating that the distribution had to be made and the executor had to be discharged. The supreme court thereupon consolidated the issue raised by the Petition of Certiorari with the issues already on appeal. We consider the certiorari issues joined in this Division V.

■ We believe by this appeal taken by the nine beneficiaries, objectors to the final report effectively prevented the order approving the final report from becoming a final order thereon. Therefore, the executor acted prudently in not making the distribution during the pendency of the appeal. It is incongruous to appeal the order approving the final report, distribution of assets, and discharge of the executor on one hand, and demand that distribution be made on the other hand. This would place the executor in an intolerable, if not impossible, situation as a fiduciary in fully performing his duties. The probate matters affected and involved in the appeal should be stayed as a matter of course.

Our decision here does effect a change in the final distributive shares of the beneficiaries.

■ In the case of *Matter of Estate of Tollefsrud*, 275 N.W.2d 412, 417–18 (Iowa 1979), the supreme court adopted the *collateral matter exception* regarding any transfer of jurisdiction by appeal in probate and domestic disputes. At page 418, the supreme court stated:

> We hold a trial court retains jurisdiction to proceed as to issues collateral to and not affecting the subject matter of the appeal. While not foreclosing its operation in other appropriate settings, allowing the retention of jurisdiction over collateral matters by a trial court would be of greatest value in the probate and domestic relations settings.

We agree with the trial court that the rulings that had been entered were *not* final orders for probate purposes. The court's order overruling the objectors' application of authorizing execution to issue was collateral to and did not affect the subject matter on appeal. The executor was, therefore, not required to file a supersedeous bond to stay proceedings on appeal as claimed by the appellants. The executor appropriately withheld making the distribution and not proceeding to close the estate during pendency of this appeal. He did what he should have done with or without a court order. Therefore, we do not decide

whether the trial court erred, exceeded his jurisdiction, or acted illegally as the order was of no significance affecting matters of this appeal or acts of the executor after appeal was taken.

VI. *Attorney's Fees for Defense of the Executor.* Cross-appellants challenge the probate court's ruling denying the attorney for the executor, Thomas McCullough, an allowance of fees for his services in successfully defending the executor against the objectors' charge of malfeasance in connection with the sale of the farmland. The trial court based its decision on *In re Estate of Brady*, 308 N.W.2d 68 (Iowa 1981). We believe the facts of this case are sufficiently distinguishable from *Brady* to justify a contrary result.

In *Brady* decedent executed two wills in Iowa, both of which named a bank as co-executor. Decedent then moved to Wisconsin and executed a third will naming his two second cousins as executors. Decedent died in Wisconsin and the third will was admitted to probate there. The bank intervened in the Wisconsin estate proceeding challenging the third will. The bank subsequently dismissed its petition of intervention in the Wisconsin proceeding and instituted an unsuccessful declaratory judgment action in Iowa raising the same issues regarding the third will. The residuary legatees under the third will brought a tort action against the bank. The supreme court held that the attorneys for the bank could not recover fees from the estate because the defense of the malfeasance action was for the protection of the bank and not for the protection of the estate. *Id.* at 74.

In contrast, all of the litigation in this case, except for a declaratory judgment proceeding, has been instituted by the objectors rather than the executor. The actions of the executor, about which the objectors complain, have been consistently upheld. The tort action, although brought against the executor personally, was in essence a continuation in another form of the objections brought against the executor's actions in the probate proceeding. Whereas the bank in *Brady* was arguably challenging the third will to protect its own

interest in remaining the executor, the executor in this case has sought to fulfill his duties as diligently as possible and has been met with persistent obstacles over which he has no control. Under these circumstances we conclude that it is entirely consistent with the reasoning of *Brady* to allow attorney's fees to be paid by the estate. The defense of the suit against the executor did benefit the estate by settling the legality of the executor's actions and clearing the way for a more expeditious closing of this estate. *See* Iowa R. Probate P. 2(c).

 We hold, therefore, that the attorney for the executor is entitled, under Iowa Code section 633.199, to fees paid by the estate for defending the executor. We have examined the attorney's itemized statement of services and expenses filed June 18, 1981, and find them to be reasonable. Therefore, the attorney is entitled to payment of these fees from the estate.

Cross-appellants argue that the malfeasance action against the executor was groundless and brought in bad faith. Consequently, they urge that the expense of defending the executor should be deducted from the nine objectors' shares in the estate. Although this is a close question, we decline to go that far.

VII. *Attorney's and Executor's Fees for the Declaratory Judgment Action.* Cross-appellants also challenge the probate court's ruling denying fees to the executor and his attorney for pursuing the declaratory judgment action filed December 23, 1975. We hold that the probate court did not exceed a reasonable degree of discretion in denying these fees. The declaratory judgment action was filed by the executor to obtain guidance in the distribution of the assets of the estate. This is not the type of litigation the pursuit which would be considered an extraordinary service.

VIII. *Application for Finalization of the Estate.* The executor has requested that this court finalize the estate in this appeal. We deem it more appropriate for the district court sitting in probate to finalize the estate. However, we approve the formula set forth in Revised Exhibit C of the Amended Accounting. This distribution shall be subject to adjustments made by our court in this opinion. Accordingly, we remand the case to the probate court to finalize the estate in conformity with the formula in Revised Exhibit C and this opinion.

IX. *Executor and Attorney Fees for this Appeal.* The executor and attorney for the executor have filed an application for an order fixing their fees for handling the present appeal and for continuing the necessary administration of the estate. We approve of the charge of $3,453.88 relating to work done for this appeal, and we order this sum to be paid to them from the estate. We deny the requested fees for services for additional tax and administration matters.

X. *Motion to Dismiss.* Cross-appellants move that this appeal be dismissed because of the failure of appellants to file a brief of the appropriate length. While we note that appellants have violated Iowa Rule of Appellate Procedure 14(h), we do not find it necessary to rule on this motion.

The costs of this appeal are assessed and charged to the appellants.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.