Clinton Norris BUCKINGHAM and
Norma A. Buckingham,
Appellants,

v.

FEDERAL LAND BANK
ASSOCIATION,
Appellee.

No. 85–1149.

Supreme Court of Iowa.

Jan. 14, 1987.

Robert Kohorst of Robert Kohorst, P.C., Harlan, for appellants.

Patrick T. Deren and Richard C. Schenck of Salvo, Deren, Schenck & Lauterbach, P.C., Harlan, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, WOLLE, LAVORATO, and NEUMAN, JJ.

REYNOLDSON, Chief Justice.

District court dismissed Clinton and Norma Buckingham's suit against the Federal Land Bank Association (FLB) after determining the claim was barred by the doctrine of issue preclusion. We transferred the case to the court of appeals, which affirmed. After granting the Buckinghams' application for further review, we also affirm.

The events leading to the present appeal were set in motion in 1962. In that year Harriot Buckingham, now deceased, entered into an agreement with her children, Helen, John, and Clinton, to leave certain property to each of them upon her death. In return for the property left to him, Clinton agreed to "pay the first mortgage debt presently due [FLB]" on the property.

In 1976, Harriot increased the mortgage amount on the property she was leaving to Clinton to $63,000. Clinton consented to this increase, and both Harriot and he signed the necessary documents.

In 1979, Harriot again increased the mortgage amount on the property to $115,-000. Only Harriot signed the documents relevant to the 1979 transaction.

Following Harriot's death, Clinton, on September 10, 1982, filed a claim in her estate for an amount equal to the additional debt and interest incurred by Harriot in 1979. Clinton alleged Harriot's actions in 1979 were undertaken without his consent and in violation of their 1962 agreement. September 17, 1982, the executor denied Clinton's claim and notified him of his right to pursue the claim in district court.

September 23, 1982, Clinton filed action in district court against the estate's executor. John Buckingham, Clinton's brother, subsequently intervened against Clinton, joining with the estate.

Prior to trial, Clinton submitted proposed jury instructions to the court, one of which we quote below. Under his view of the case, to recover he would be required to prove by a preponderance of the evidence:

1. That there was a written agreement between the decedent and [Clinton] providing for the passage of title to real estate to [him] without indebtedness other than the indebtedness existing presently due at the time of the execution of the agreement.

2. That additional indebtedness was incurred by the decedent secured by a mortgage on that real estate without the consent of [Clinton].

3. The amount of the additional indebtedness incurred without authorization of [Clinton].

Because the amount of the 1979 additional indebtedness was not seriously disputed, there remained two crucial issues to be resolved by the jury: Was the 1962 agreement a legally binding and enforceable agreement, preventing Harriot from incurring additional indebtedness; and did Clinton consent to the 1979 increase of indebtedness?

Clinton's claim eventually was tried to a jury. District court's jury instructions adopted Clinton's proposed instruction set out above. The jury, in a general verdict, found for the estate.

Clinton appealed district court's judgment entered on the jury verdict. While the appeal was pending, the parties, on February 5, 1985, entered into a settlement agreement. Both Clinton and his wife Norma were parties to the settlement agreement, and under its terms jointly were paid $20,000. Clinton's appeal then was dismissed.

May 7, 1985, a little more than two months after the settlement was finalized, Clinton and Norma (collectively, Buckinghams) filed the present action against FLB. Buckinghams' petition raised the same issues addressed and fully litigated in the probate action: The legal effect of the 1962 agreement; and Clinton's consent to the 1976 increase in indebtedness. Damages sought in this second action were the same as in the prior action, except here Buckinghams also sought punitive damages.

In an amended answer, FLB included documents from the prior action and moved that Buckinghams' petition be dismissed under Iowa Rule of Civil Procedure 222 on the basis of issue preclusion. Following a hearing, district court entered judgment in favor of FLB based on issue preclusion and dismissed Buckinghams' petition. After review and affirmance by the court of appeals, Buckinghams' appeal is now before us.

I. Absent consideration of the effect of the prior settlement agreement, the doctrine of issue preclusion clearly is applicable to this case. As a general rule, issue preclusion bars relitigating in a subsequent action issues raised and fully litigated in a prior action. *Bascom v. Joseph Schlitz Brewing Co.*, 395 N.W.2d 879, 881 (Iowa 1986); Restatement (Second) of Judgments § 27 (1982).

For issue preclusion to be applicable, however, four prerequisites must be met:

(1) The issue[s] concluded must be identical;

(2) The issue[s] must have been raised and litigated in the prior action;

(3) The issue[s] must have been material and relevant to the disposition of the prior action; and

(4) The determination[s] made of the issue[s] in the prior action must have been necessary and essential to the resulting judgment.

*Bascom*, 395 N.W.2d at 881 (quoting *Kraft v. El View Construction, Inc.*, 394 N.W.2d 365, 368 (Iowa 1986)); *see also Risken v. Clayman*, 398 N.W.2d 833, 836 (Iowa 1987); *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981).

In addition to these traditional prerequisites, FLB, because it seeks to apply the doctrine defensively to a party not joined in the original action (Norma Buckingham), must show this party "was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant ... issue[s] and be properly bound by [their] resolution." *Hunter*, 300 N.W.2d at 123 (quoting *Bertran v. Glens Falls Insurance Co.*, 232 N.W.2d 527, 533 (Iowa 1975)).

 All of these prerequisites are met here. First, the existence of a legally binding agreement and the question of consent, both central to the present action, were raised and fully litigated in the first action. Second, these two issues were not only material and relevant to the resolution of the prior action but were necessary and essential to the jury's verdict and district court's judgment in that action. While because of the general verdict we cannot know which of these issues was decided adversely to Clinton's claim, the jury must have found either Clinton had no legally enforceable right under the 1962 agreement or he consented to the additional debt incurred in 1979. Either finding, fatal to Clinton's initial action, would be equally fatal here.

 Finally, we consider the status of Norma Buckingham. Although she was not a party to the original action, she also was granted no interest in the property by the 1962 agreement. Thus, her only possible claim to the property is through Clinton, her husband and claimant in the prior action. Without question, Norma is "so connected in interest with [her husband] as

to have had a full and fair opportunity to litigate the relevant ... issue[s] and be properly bound by [their] resolution." *Id.* Her active involvement in the prior action was demonstrated when she not only signed the settlement agreement but was jointly paid $20,000.

II. Although issue preclusion appears applicable to Buckinghams' petition, we briefly turn to the settlement of the original claim on appeal to explore whether it would immunize this action from application of the doctrine of issue preclusion. We have noted that after final judgment in Clinton's first action, but before his appeal could be resolved, the parties settled the claim and the appeal was dismissed. We conclude this settlement neither disturbs the otherwise preclusive effect of the prior proceedings nor prevents application of issue preclusion.

As a general rule, issue preclusion is applicable only when the issue raised were determined "conclusively in a prior action in which a judgment was entered." *Mulkins v. Board of Supervisors,* 374 N.W.2d 410, 415 (Iowa 1985); *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981). Preclusive effect also is applied when a case is dismissed with prejudice prior to trial. *Butler v. Butler,* 253 Iowa 1084, 1109–12, 114 N.W.2d 595, 610–11 (1962). Buckinghams argue the same preclusive effect should not attach when the settlement is entered into after entry of final judgment by district court and while appeal is pending.

The case most supportive of Buckinghams' view is *Adam v. State,* 380 N.W.2d 716 (Iowa 1986). In *Adam,* plaintiffs sought to hold the State liable for negligently licensing and inspecting a grain elevator. *Id.* at 717. The State argued it was exempt from all liability under the terms of two provisions of the Grain Dealer's Act and the Warehouse Act. *Id.* at 719–21; *see* Iowa Code §§ 542.14, 543.38 (1975).

Plaintiffs in *Adam* challenged the State's right to rely on these provisions. They contended the issue of exemption already had been determined adversely to the State in a prior action, which like this case had been settled and dismissed while on appeal. Thus, plaintiffs argued the doctrine of issue preclusion barred the State's attempt to relitigate the exemption issue.

In rejecting plaintiffs' contention, we noted the issues raised in the two actions were identical and arose out of the same set of facts. *Adam,* 380 N.W.2d at 721. Significantly, however, the prior action involved different plaintiffs. It also was settled without admission or binding determination of liability, and while on interlocutory appeal following a denial of the State's motion for summary judgment. No final judgment on the merits had been entered. *Id.*

The present case clearly is distinguishable from *Adam.* First, in *Adam,* unlike the present case, no issue of liability had been fully litigated and resolved, on either substantive or procedural grounds. Rather, the case was dismissed while on interlocutory appeal from a ruling that denied a summary judgment motion and left the merits of the action unresolved.

Second, when dismissed, the *Adam* case was on interlocutory appeal. By definition, an interlocutory appeal proceeds from a decision that is not final. *See* Iowa R.App.P. 1, 2.

Finally, unlike the present case in which issue preclusion is used defensively, in *Adam* issue preclusion was asserted offensively. *See Hunter,* 300 N.W.2d at 123. Although offensive use of issue preclusion is allowed in Iowa, *id.* at 125, it is more restrictively and cautiously applied than defensive issue preclusion, *id.* at 124–25; *see also Bertran v. Glens Falls Insurance Co.,* 232 N.W.2d 527, 533 (Iowa 1975); *Goolsby v. Derby,* 189 N.W.2d 909, 916 (Iowa 1971).

We conclude the settlement of Buckinghams' prior claim after final judgment was entered by district court but before the appeal could be heard does not preclude defensive use of issue preclusion. All prerequisites for the defensive use of issue preclusion are established here. Further,

unlike *Adam,* a final judgment on the merits was entered by district court.

Buckinghams' attempt to avoid application of issue preclusion by inserting a clause in the settlement agreement stating the first case was dismissed without admission of liability cannot avoid the effect of a final, fully adjudicated district court judgment on the merits. To allow a party to litigate a claim fully and to a final conclusion in the district court and then, after final judgment has been entered, settle the claim and file the identical claim against another defendant would not only give rise to unnecessary and wasteful litigation but would threaten the viability of the issue preclusion doctrine itself.

We affirm the decision of the court of appeals and the district court's ruling dismissing Buckinghams' petition.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.